IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVELERS CASUALTY INSURANCE COMPANY
OF AMERICA

    Plaintiff,

v.                                                                                                 No. 1:24-cv-00027 MV/DLM

NEW MEXICO BONE AND JOINT INSTITUTE, P.C.,
AMERICAN FOUNDATION OF LOWER EXTREMITY
SURGERY AND RESEARCH, INC., a New Mexico Corporation,
RILEY RAMPTON, DPM, LOREN K. SPENCER, DPM,
TERVON DORSEY, INDIVIDUALLY, KIMBERLY DORSEY,
INDIVIDUALLY, and KATE FERLIC as GUARDIAN AD LITEM
for K.D. and J.D., MINORS

    Defendants,

and

NEW MEXICO BONE AND JOINT INSTITUTE, P.C.,
RILEY RAMPTON, DPM, LOREN K. SPENCER, DPM

    Counter Plaintiffs,

v.

TRAVELERS CASUALTY INSURANCE COMPANY
OF AMERICA

    Counter Defendant.

**TRAVELERS REPLY TO DEFENDANT/COUNTER-PLAINTIFFS'
NEW MEXICO BONE AND JOINT INSTITUTE, P.C., RILEY RAMPTON, DPM, AND
LOREN K. SPENCER, DPM'S RESPONSE TO TRAVELERS' MOTION FOR
JUDGMENT ON THE PLEADINGS AND TRAVELERS' RESPONSE TO
<u>THEIR MOTION FOR JUDGMENT ON THE PLEADINGS [Doc 25]</u>**

Defendants New Mexico Bone and Joint Institute, Riley Rampton, DPM and Loren K. Spencer, DPM (collectively NMBJI Defendants) contend that the professional services exclusion in the Travelers Policy does not exclude coverage for all underlying claims because some claims are administrative. Response at 3. Regardless of what the plaintiffs in the underlying proceeding call their claims, their claimed injuries resulted from allegedly incompetently performed medical procedures and as such, are precluded by the professional health services exclusion. Alternatively, the claims fall within the expected and intended injury exclusion. Thus, as a matter of law, the Policy does not cover the claims in the underlying proceeding.

The NMBJI Defendants have also filed a counter motion asking for a Judgment on the Pleadings (JOP Motion) that Travelers has a duty to continue to defend the NMBJI Defendants. Because the Policy excludes all coverage for the claims brought against the NMBJI Defendants, there is no duty to defend. Accordingly, Travelers asks this Court to grant its Motion for Judgment on the Pleadings and deny the NMBJI Defendants' Motion.

**Response to Statement of Facts**

Travelers agrees with NMBJI's background outlining the policy provisions in ¶¶ 1, 2, 3, 4, and 5. Similarly, Travelers does not disagree with the NMBJI Defendants' description of the lawsuit filed in New Mexico state court as outlined in ¶¶ 6 and 7. Travelers disagrees with the NMBJI Defendants statement in ¶ 8 that "the Dorsey's allegations fall outside the scope of the Policy's Professional Health Care Service Exclusion and, instead relate to alleged business decisions of NMBJI, Dr. Rampton, Dr. Spencer and others," on the grounds that this is a conclusion of law and not a statement of fact. Similarly, while Travelers does not disagree with ¶ 9's representation of allegations in the Underlying Proceeding, Travelers disagrees with the NMBJI Defendant's legal conclusions about those allegations.

Travelers agrees with the NMBJI Defendants factual statements in ¶¶ 10 and 11 that Travelers agreed to defend the NMBJI Defendants under a reservation of rights, but disagrees with the statement in ¶ 11 that the sole basis for its request for relief in this Court is that the Policy's professional health care services exclusion precludes all coverage for the allegations in the

1

Underlying Proceeding. A review of Travelers' Complaint filed in this Court, plainly demonstrates that Travelers also raised the intended and expected benefit exclusion in the Policy. Travelers disputes Paragraph 12, because while the NMBJI Defendants' reasons for filing this lawsuit are unknown to Travelers, a statement about their intent in bringing this counterclaim do not belong in a background asserting facts.

Finally, the NMBJI Defendants have attached an exhibit dated December 2023, from their liability insurer, MedPro Group. Doc. 24, Ex. 1. They reference this letter in their Response/JOP Motion as an additional fact. *See* Doc. 25 ¶ 13. This letter is improperly raised as it is material outside the pleadings. Further, it is entirely irrelevant as another insurer's stance regarding what its separate policy covers has no bearing on any issue before this Court. The only question before the Court in Travelers' Complaint is whether *this* Policy precludes coverage for the claims brought in the Underlying Proceeding.

As additional undisputed facts, As set forth in the Complaint (Id. ¶ 25), the policy precludes coverage for expected and intended injuries.

> **2. Exclusions**
> This insurance does not apply to:
> **a. Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Doc. 1 ¶ 21.

## Legal Standard

A court may grant a motion for judgment on the pleadings under Federal Rule of Civil Procedures ("Rule") 12(c) "when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted). Courts review a motion for judgment on the pleadings under 12(c) and a motion to dismiss for failure to state a claim under Rule 12(b)(6) under identical standards. *See Jacobsen v Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(b) and 12(c). When a plaintiff moves for

2

judgment on the pleadings, the Court should "'accept as true all factual allegations in the answer and all factual allegations from the complaint that the defendant admits or fails to deny.'" *See Am. Nat'l Prop. and Cas. Co. v. Carrusco*, 2023 WL 4365366, *2, No 22-cv-0725-KG-JHR (N.M. D. Ct. July 6, 2023); quoting *United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018); *see also Landmark Am. Ins. Co. v VO Remarketing Corp.*, 619 Fed. App'x. 705, 710-14 (10th Cir. 2015) (affirming judgment on the pleadings after finding that there were no material issues in dispute in the complaint and the answer).

When a matter is before a federal court based on diversity jurisdiction, New Mexico substantive law applies in determining insurance contractual issues. In New Mexico and elsewhere, "an insurance policy is a contract and is generally governed by the law of contracts and the rights and duties of the parties are to be determined by its terms." *Thompson v. Occidental Life Ins. Co.*, 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct. App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977). When an insurance contract is unambiguous, that language should be construed in its usual and ordinary sense. *See, e.g., Security Mutual Casualty Co. v. O'Brien*, 99 N.M. 638, 641, 662 P.2d 639, 642 (1983) (unambiguous policies that do not contravene public policy must be enforced as written). In other words, New Mexico courts may not strain to locate ambiguities where none exist, so as to find coverage; nor may the courts violate the plain language of insurance policies by interpreting them to provide coverage where it was not intended. *See, e.g. Gonzales v. Allstate Ins. Co.*, 1996-NMSC-041, ¶ 16, 122 N.M. 137, 141, 921 P.2d 944, 948; *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 759, 726 P.2d 1386, 1389 (1986). Insurance policies are not interpreted to provide coverage for risks the insurer did not contemplate or underwrite or for which it did not receive a premium. Consequently, New Mexico courts do not alter contracts by construction, but only interpret and enforce the contract the parties made for themselves. *Brown v. American Bank of Commerce*, 79 N.M. 222, 441 P.2d 751, 755 (1968) (clear contract terms are enforced as written); *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 20, 139 N.M. 24, 127 P.3d 1111 (same). The party seeking coverage usually bears the burden of proving that its claim is

within the description of the risks covered by the policy. *Cf., Lopez v. Foundation Reserve Ins. Co., Inc.*, 98 N.M. 166, 171, 646 P.2d 1230, 1235 (1982).

In New Mexico, an insurer's duty to defend is distinct from and independent of its duty to indemnify. *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 704, 832 P.2d 394, 395 (1992); *Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 829, *modified on other grounds*, 866 F. Supp. 1560 (D.N.M. 1994). The duty to defend is based on the nature of the allegations of the third party's complaint alleging liability, and it is based on whether those allegations state facts that potentially bring the claim within coverage. *Knowles,* 113 N.M. at 704, 832 P.2d at 395; *Servants of the Paraclete*, 857 F. Supp. at 829. The insurer must determine whether it has a duty to defend by comparing the factual allegations of the complaint with the insurance policy. *Lopez v. New Mexico Public Sch. Ins. Auth.*, 117 N.M. 207, 209, 870 P.2d 745, 747 (1994); *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 19, 128 N.M. 434, 439, 993 P.2d 751, 756. The insurer must also resolve ambiguities in the policy in favor of potential coverage. *Valley Improvement Ass'n v. United States Fidelity & Guar. Corp.*, 129 F.3d 1108, 1116 (10th Cir. 1997); *State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct. App. 1984), *overruled on other grounds by Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 805 P.2d 70 (1991).

## ARGUMENT

The basis for all of the claims against the NMBJI Defendants in the underlying proceeding is that the NMBJI Defendants had an obligation to inform the underlying plaintiffs, the Dorseys of an agreement between NMBJI and the American Foundation of Lower Extremity Surgery and Research (AFLESR). Under the agreement AFLESR provided NMBJI with fellowship students to work at NMBJI. The Dorseys assert that the arrangement financially benefitted the NMBJI Defendants and AFLESR and injured the Dorseys because Tervon Dorsey suffered injury when he permitted fellows to perform medical procedures on him.

4

In its Motion for Judgment on the Pleadings, Travelers asserted that all claims in the underlying proceeding are precluded from coverage by Policy exclusions. The NMBJI Defendants disagree. They contend that Travelers' "analysis ignores certain allegations in the Dorsey Lawsuit of acts that relate to activities that do not arise out of Professional Health Care Services as defined in the Policy." Reply/Motion at 14. According to the NMBJI Defendants, the claims do not arise out of "medical treatment, advice or instruction, but instead related to administrative acts, business decisions or other acts not necessary to a medical professional to use his specialized knowledge or training. *Id.* at 15. This argument disregards the facts that form the basis of the claims.

As defined by New Mexico courts, medical malpractice requires that a plaintiff show that the defendant owed the plaintiff a legal duty, and the defendant breached that duty by departing from an industry standard of care, and that the acts or omissions caused in the injury. *See Diaz v. Feil*, 1994-NMCA-108, ¶ 5, 118 N.M. 385, 881 P.2d 745, 748. As explained by New Mexico courts that examine the contours of medical malpractice, if proof of an alleged injury requires evidence concerning the competence of a medical practitioner, the claim is a form of medical negligence claim. *See Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 86, 150 N.M. 283, 258 P.3d 1075, 1095 (citing *Quimby v. Fine*, 45 Wash.App. 175, 724 P.2d 403, 406 (1986) (finding this case instructive for its conclusion that "a claim under the consumer protection statute premised on the same facts as medical negligence could not go forward because it related to the actual competence of the medical practitioner defendant.")). Because each of the claims in the Dorsey lawsuit is tied to a bodily injury that they assert arose out of medical negligence, each claim is implicitly a medical negligence claim.

Finally, the Policy also bars coverage for expected and intended injuries. This exclusion focuses on the acts underlying the theory of recovery and precludes coverage for acts that result in an injury in the same general category of harm. The claims in the underlying proceeding assert that the NMBJI Defendants acted to conceal their joint venture with AFLESR with the purpose of maximizing their financial gain. Should the court find certain claims are not covered by the professional services exclusion, they are covered by the expected and intended injury exclusion.

5

The NMBJI Defendants JOP Motion has no merit. New Mexico law is well established that if there is no duty to indemnify, there is not duty to defend. Accordingly, the Court should deny the NMBJI Defendants JOP Motion and grant Travelers Motion.

### A.  AFLESRI has not responded to Travelers' Motion.

The NMBJI Defendants assert that AFLESRI is not an insured under the Policy and has never made a claim for insurance under the Policy, therefore there is not a dispute about coverage with respect to AFLESRI. As an initial matter, Travelers observes that although the counsel appearing for NMBJI has also entered an appearance for ALFESRI, it has not filed any briefing for that party, so this argument has not been properly raised. *See* Doc. 17, 18, 24, 25. Regardless, Travelers disagrees with this statement.

The underlying allegations accuse NMBJI and AFLESRI of being in a joint venture and further imply they are a single entity. *See* Doc 1-2 ¶¶ 4-14, 41, 87. While AFLESRI is not a named insured, neither a court nor a jury have made factual determinations about the relationship between NMBJI and ALFESRI. Travelers agrees that AFLESRI is not insured by the Policy, but would like a declaration, it has no duty to indemnify AFLESRI for any potential liability.

### B.  Whether the NMBJI Defendants have coverage from another insurer or not is irrelevant.

The NMBJI Defendants have attached a letter from MedPro, their professional services insurer, as so called evidence that the professional health care services exclusion does not exclude the Dorseys' claims in the underlying proceeding.  According to the NMBJI Defendants, because MedPro denied certain claims as outside the scope of the professional liability provision, Travelers position is "contradicted by the NMBJI Defendants' professional liability insurer." Doc. 25 at 21. Although the letter is not relevant evidence, it does not support the NMBJI Defendants' argument either.

As an initial matter, the MedPro Policy defines "professional services" differently from the Travelers' Policy. In the MedPro Policy, coverage is provided for professional services, which include "(a) the rendering of medical, surgical, dental, or nursing services to a patient and the

6

provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insureds' practice." Doc. 24, Ex. 1 at 24. In contrast, the Travelers' Policy excludes a broader category of professional services "[a]ny medical, surgical, dental, laboratory, x-ray or nursing services, treatment, advice or instruction." Because the Travelers' exclusion precludes coverage not only for medical treatment, but for "advice and instruction" the Travelers professional health care exclusion is broader and has a more expansive application than the professional services definition included in the MedPro policy.

The NMBJI Defendants also submit that MedPro's denial and Travelers' position leave them with a "gap in coverage." *Id.* at 21. This may be a true statement. But it is irrelevant. If they are suggesting that there is something legally significant about a gap in coverage, there is nothing in the law that states that a CGL policy must cover everything not covered by another policy. It is well settled that insurers and insured may negotiate their own contractual terms and include or exclude coverage under those terms. *See New Mexico Physicians Mut. Liability Co. v. LaMure*, 1993-NMSC-048, ¶ 8 116 N.M. 92, 860 P.2d 734, 737 ("The parties to an insurance contract may validly agree to extend or limit insurance liability risks.") (citation omitted).

But what undercuts the NMBJI Defendants' argument is the fact that MedPro did not deny any claims because they did not constitute professional service coverage. MedPro denied coverage to certain of the claims under the policy's "willful tort" exclusion. *See id.* ("The [p]olicy excludes the payment of damages that "are in consequences of the performance of . . . a willful tort . . ." (ellipsis in original"). Much like MedPro's willful tort exclusion, the Travelers Policy has an expected and intended injury exclusion that excludes coverage for any bodily injury or property damages expected or intended from the standpoint of the insured.

In sum, the MedPro letter is irrelevant. To the extent it has any relevance at all—it offers more support to Travelers' position. As discussed infra, the professional services exclusion precludes coverage for all of the Dorseys' claims. Even if the Court were to find that it does not, the expected and intended injury exclusion does.

7

### C. Each claim in the underlying action relies on a premise that the podiatrists were incompetent and so are actually medical negligence claims.

The NMBJI Defendants argue that many of the allegations in the underlying proceeding arise out of "alleged administrative acts, business decision, or other acts that were not necessary for a medical professional to use his specialized knowledge or training." This argument ignores that when a court interprets policy exclusions, it does so "based on the acts underlying the theory of recovery, not the legal elements of the claim for recovery itself." *See West Am. Ins. Co. v. Atyani*, 366 F.Supp.3d 1270, 1280 (D. N.M. 2019) (citing *Lopez v. N. M. Pub. Sch. Ins. Auth.*, 117 N.M. 207, 870 P.2d 745, 747 (1994)). Each claim in the underlying proceeding alleges an act that resulted in deficient, incompetent medical services. As explained by the Supreme Court in *Millers Cas. Ins. Co. of Texas v. Flores*, 1994-NMSC-058, 117 N.M. 712, 876 P.2d 227, the professional health care exclusion precludes all claims alleging deficiencies in medical services.

In *Miller*, the New Mexico Supreme Court addressed whether a professional services exclusion excluded coverage for a plaintiff's claims of negligent hiring, training and inadequate supervision. *Id*. At issue was whether a CGL policy provided coverage for a debilitating stroke that occurred when a physician's untrained assistant gave a patient a contraindicated injection of estrogen. *Id.* at 229. The plaintiff argued that the professional services exclusion was inapplicable because the physician's decision to hire the poorly qualified assistant was an administrative decision. The district court granted the insurer summary judgment on that issue. On appeal, the New Mexico Supreme Court affirmed.

Recognizing that this case presented an issue of first impression, the New Mexico Supreme Court examined how other jurisdictions applied the exclusion. It noted that most courts began with the "rule that when determining what constitutes professional services, 'we should look not to the title or the character of the party performing the act but to the act itself." *Miller*, 876 P.2d at 229-230 (quoting *Mason v. Liberty Mutual Insurance Co.*, 370 F.2d 925, 926 (5th Cir. 1967) (further citation omitted)). The Court found that when hiring, supervising, or training the assistant, the physician had used his professional judgment about the assistance's ability to perform medical

services. For this reason, any mistakes the physician had made in assessing her competence were related to his medical services.

The *Miller* plaintiff then attempted to distinguish medical malpractice claims and ordinary negligence claims, arguing that the professional health care exclusion precluded the former but did not preclude the latter. The Court rejected this argument. It concluded that the central issue in determining whether the exclusion applied was not the naming of the tort, but whether the hiring, training, and supervising of the physician's staff was a part of the medical services the physician offered to his patient.

The NMBJI Defendants agree that *Miller* is persuasive authority on whether their claims in Count II, negligent hiring, training, supervision and retention are covered by the professional services exclusion. *See* Doc. 25 at 17. But they argue that *Miller* is not persuasive authority with respect to the other claims in the underlying proceeding because the duty to defend is triggered by the allegations "related to interrelated financial and business relationships, business schemes (and disclosure or non-disclosure of such schemes")" that "relate to administrative functions and decisions that do not require professional judgment." Doc. 25 at 17. To support this argument, they cite a decision by the Texas Court of Appeals that concluded that a lawyer's solicitation of a client was not excluded from coverage by the professional services exclusion. Doc. 25 at 18 (citing *Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Ct. App. Tex. 1998).

*Susman* is not helpful to the NMBJI Defendants on this issue. *See Coll v.. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (a federal district court sitting in diversity must follow the decisions of the state supreme court or attempt to predict what it would do). Even if Susman had anything to say about New Mexico law, it is distinguishable. At issue in *Susman* was whether defamation of a physician in a lawyer's client solicitation letter was precluded by a professional services exclusion. Unsurprisingly, the Texas court found that the letter, which did not include legal advice, did not fall within the policy's definition of professional services. *Id.* at 478 ("The Firms potential liability arose from allegedly defamatory statements contained in the solicitation

9

letter, the sending of which was incidental to the professional services."). The NMBJI Defendants' additional legal support from jurisdictions other than New Mexico is similarly factually distinguishable. *See Guaranty Natl. Ins. Co. v. North River Ins. Co.*, F.2d 133, 136 (5th Cir. 1990) (finding that a decision to maintain a psychiatric patients window with screws in window sashes rather than fixed screens over windows was not precluded by a professional services exclusion because it was not based on medical judgement but was an administrative decision); *Gregg v. Valby LLP v. Great Am. Ins. Co.*, 316 F.Supp.2d 505, 513-15 (S.D. Tex. 2004) (claims against a law firm based on the lawyers' billing and setting fee practices were not professional services because the plaintiffs' allegations were directed only at the firm's billing practices and did not include any complaints about legal advice); *Transportes Ferroes De Venez II CA v. NNK Corp.*, 239 F.3d 555, 564 (3d Cir. 2001) (distinguishing between a design defect which involves professional services and a manufacturing defect which does not)

None of the allegations here suggest that Mr. Dorsey went to NMBJI as the result of any outreach by them nor do they involve complaints about administrative services separate from the medical negligence claims. Rather the Dorseys argue that the NMBJI intentionally concealed their relationship with AFLESRI, the competency of some of the providers, and/or the necessity for certain medical procedures. But just as in *Miller*, whether the fellows at NMBJI had the competency to perform those services and/or whether the services were necessary was a judgment call by medical practitioners. The alleged injury from what they call administrative actions is founded on an argument about the competency of the providers.

As explained by New Mexico Court of Appeals in *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, 150 N.M. 283, 258 P.3d 1075 whether a claim is substantively a medical negligence claim relies, in part, on whether the allegations would require proof of medical competency.  In *Grassie*, the New Mexico Court of Appeal was asked whether an Unfair Practices Claim ("UPA") could proceed against a hospital. Because a New Mexico court had not previously addressed this issue, the Court examined case law from other jurisdictions. Generally, other jurisdictions had concluded that "unfair practice statutes only apply to the entrepreneurial, commercial or business

10

aspect of a physician's practice, including advertising, solicitation of business, and billing practices." *Id.* at 1095. The New Mexico Court of Appeals agreed. But the Court further reasoned that not every claim that included UPA claims based on advertising, solicitation of business or billing practices could be isolated from medical negligence claims. Accordingly, the Court concluded that to determine whether a UPA claim could lie against a medical provider depended "on whether the medical negligence and UPA claims are coterminous or indistinguishable; that is whether they rely on the same facts and rely on a judgment as to the actual competence of the medical practitioner for resolution. If they do, a UPA claim is not appropriate." *Id.* at 1095-96.[1]

Here, the Dorsey's allege that some or all of the NMBJI Defendants created a financially beneficial scheme whereby they used unqualified podiatrists obtained from AFLESR to provide medical services and as "[a]s a proximate result, Tervon Dorsey suffered permanent, severe personal physical injuries and extensive damages[.]. Complaint ¶ 92. Notably, the scheme underlying each of the alleged administrative claims relies on the syllogism (1) that Defendants deliberately hid their use of unqualified personnel to provide medical services, (2) that unqualified medical personal negligently performed the treatments, and (3) that the treatment resulted in injury. As found in *Miller*, whether a medical practitioner is competent to perform medical services is directly tied to professional services. And as explained in *Grassie*, claims are severable from claims of medical negligence only if they do not involved questions about medical competency. In sum, the underlying suit would not have been brought absent the provision of allegedly negligent

---

[1] The NMBJI Defendants cited support from Connecticut, Washington, and Michigan made the same competency distinction found in *Grassie*. *See Haynes v. Yale-New Haven Hosp.* 699 A.2d 964, 974 (Conn. 1997) ("We thus conclude that the touchstone for a legally sufficient [UPA] claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as [UPA] claims cannot form the basis for a [UPA] violation. To hold otherwise would transform every claim for medical malpractice into a [UPA] claim."); *Ikuno v. Yip*, 912 F.2d 306, 312 (9th Cir. 1990) ([UPA] claims "may arise only when the actions at issue are chiefly concerned with 'entrepreneurial' aspects of practice, such as the solicitation of business and billing practices, as opposed to claims directed at the 'competence and strategy' employed by the [UPA] defendant."); *Nelson v. Ho*, 564 N.W.2d 482, 486-87 (Ct. App. Mich. 1997) (finding that a physician's failure to tell the patient the type of sutures used in a surgery or the risk involved did not charge defendant with "misconduct in the entrepreneurial, commercial or business aspect of his practice" but were "principally attacks on the actual performance of defendant's medical services, which would be more appropriately addressed n a medical malpractice claim," and so the [UPA] did not apply).

11

medical services. Thus the medical negligence claims are inextricably tied with the alleged administrative claims.

The NMBJI Defendants allege that allegations regarding a failure to adequately disclose the "business scheme between the defendants and the financial connections between the defendants" are unrelated "to the rendering or failure to render professional medical services." Doc. 25 at 19. That might be true if there was an injury separate from a medical injury. But the Dorseys do not identify a separate injury attributable to the alleged administrative claims. Indeed, they acknowledge that knowing the scheme probably would not have changed what occurred. *See* Doc. 1-2 ¶ 77 ("The disclosure of these schemes to patients, including Tervon Dorsey, would not necessarily have cured the unethical financial motive, conflicts and biases that the schemes created[.]"). Importantly, as structured, whether the fellows working at NMBJI were competent to perform procedures on Mr. Dorsey is an integral component of each claim. Accordingly, Travelers asks the Court to find that all of the claims are precluded by the professional service exclusion.

> **D.    The claims that the NMBJI Defendants call "administrative" substantively allege intentional torts and are thereby precluded by the expected and intended injury exclusion.**

Any of the Dorsey claims that are not excluded by the professional health services exclusion are disallowed from coverage by the expected and intended injury exclusion. As expressed in the insuring agreement, Travelers has "the right and duty to defend the insured against any suit seeking bodily injury or property damages to which this insurance applies." But Travelers does not have the "duty to defend the insured against any 'suit' seeking damages for "bodily injury" or "property damage" to which the insurance does not apply. The policy applies to bodily injury or property damages that arises out of an occurrence. As defined in the policy, an occurrence is "an accident, including continuous or repeated exposure to the same general harmful conditions during the policy period.

"Accident" is not defined in the policy. Under New Mexico law, the term "accident" in an insurance policy "expresses the thought of an event occurring without design or purpose, or

12

unintentionally on the part of the [insured]. "New Mexico law also establishes that liability insurance will not extend to deliberate, harmful acts even if the resulting injury is somewhat different than what the insured intended". *Sena v. Travelers Ins. Co*., 801 F. Supp. 471, 476 (D.N.M. 1992). The inquiry into whether an injury is accidental informs a court's determinations as to whether an "occurrence" is present and whether the "intentional injury" exclusion applies. *Mid-Continent Casualty Co. v. Circle S Feed Store, LLC,* 754 F.3d 1175, 1182 *citing, Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 864 F. Supp. 2d 1157, 1197 n.13 (D.N.M. 2012), other grounds reconsidered in CIV 10-0137 JB/RHS, 981 F. Supp. 2d 981, 2013 U.S. Dist. LEXIS 156735, 2013 WL 5934489 (D.N.M. Aug. 30, 2013). This policy includes an exclusion for intentional injuries which it refers to as an expected or intended injury exclusion.

The New Mexico Supreme Court considered the validity of this exclusion in *Knowles v. United Services, Auto Ass'n,* 1992-NMSC-030, 113 N.M. 703, 832 P.2d 394. In *Knowles*, the question before the Court was whether allegations that a defendant had acted to prevent others from using a road constituted wrongful eviction that precluded coverage under an expected and intended injury exclusion. Focusing on the word "intent," the defendant argued that the exclusion did not apply because he did not "subjectively expect or intend the harm alleged in the complaint." *Id.* at 396. The New Mexico Supreme Court evaluated the three different ways courts interpret "intent" and concluded that the expected and intended injury exclusion "should be construed to exclude harm of the same general type as intended by the insured" even though the insured "may not have intended or expected to cause any harm[.]" *Id.* at 398. Thus, when examining the applicability of the exclusion, the Court found that it did not matter what a defendant subjectively intended, what matters is whether "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (internal citation and quotation marks omitted). *Knowles*, 832 P.2d at 398.

In their Response to Travelers Motion, the NMBJI Defendants cite several paragraphs from two claims: Civil Conspiracy and Joint Venture (Count III) and Fraudulent Concealment and Lack of Informed Consent (Count IV) as part of their argument that not all of the Dorseys' claims are

13

excluded by the Policy. As alleged, even should the Court conclude that these claims do not fall within the professional services exclusion, both are precluded by the expected or intended exclusion.

"[C]ivil conspiracy is not actionable by itself and survives only if the underlying claim survives." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 1, 406 P.3d 1012, 1016 (citation and internal ellipsis omitted). *Bauer v. College of Santa Fe*, 2003-NMCA-121, ¶ 16, 134 N.M. 439, 78 P.3d 76, 80. To prove a claim of civil conspiracy, the Dorsey will have to show a conspiracy between two or more individuals, that wrongful acts were done for the purposes of the conspiracy and that the plaintiff was damaged as a result. *Bauer v. College of Santa Fe*, 2003-NMCA-121, ¶ 16, 134 N.M. 439, 78 P.3d 76, 80 (citation omitted).  Although the Dorseys do not identify which tort they tie to their civil conspiracy claim, the allegations suggest that it is what they call "fraudulent concealment" or fraud. *See* Doc. 1-2 ¶¶ 83-84  (alleging in their civil conspiracy claim that the NMBJI Defendants engaged in "purposeful concealment" and chose to "hide their financial incentives and joint venture to create plausible deniability" to "lure" Tervon Dorsey "into a hasty, unsupervised, and poorly performed nerve block injection procedure.")

The Dorseys fraud claims could fall into one of two categories, intentional fraud or negligent misrepresentation. Either category of fraud requires, at a minimum, a knowing or reckless representation. *See LedBetter v. Webb*, 1985-NMSC-112, ¶ 26, 103 N.M. 597, 711 P.2d 874, 879 (distinguishing negligent misrepresentation from the intentional torts of fraud or deceit). Notably, here, the alleged mens rea suggests a knowing or intentional misrepresentation. Doc 1-2 ¶¶ 88-90. (alleging a "conspiracy to push hasty, unsupervised and poorly performed procedures on their patients" by "conceal[ing] their wrongful motive by making inaccurate and misleading notes in the patient records" and did not inform the patient of the extent of their complex financial arrangements."). Regardless, the claimed injury was that as a result of the NMBJI Defendants concealment of their relationship with AFLESR for financial gain, Tervon Dorsey agreed to medical procedures to which he otherwise may not have consented and was injured. Because the NMBJI Defendants alleged acts resulted in an intended injury, and the category of injury is what

14

they intended, both Civil Conspiracy (Count III) and Fraudulent Concealment (Count IV) are precluded from coverage by the expected or intended injury exclusion.

Alternatively, if the Dorseys planned to couple their civil conspiracy claim with either the Prima Facie Tort claim (Count VI) or the Intentional Infliction of Emotional Distress claim (Count VIII), both causes of actions are intentional torts, which require both an intent to do harm and a resulting harm. An intended injury is not an occurrence as defined by the policy because it does not entail an accident. The expected and injury exclusion "is designed to prevent indemnifying an insured against loss from his own wrongful acts. *Safeco Ins. Co. v. McKenna*, 1977-NMSC-053, ¶ 13, 90 N.M. 516, 565 P.2d 1033, 1036 (N.M. 1977). As such, both intentional torts fall under the expected and intended injury exclusion.

For similar reasons, this exclusion also precludes the UPA claims. "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748, 965 P.2d 332, 338. A defendant will have knowingly made the misleading statement if the "party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d 1308, 1311-12. In the underlying proceeding, the Dorseys do not identify a specific statement that precipitated this claim. They allege a failure to inform and a failure to "create and maintain accurate medical records." To the extent that this claim is severable from a medical malpractice claim, the purpose of the alleged "deception" appears to be the necessity of certain medical procedures. The alleged harm is that Tervon Dorsey elected to have those procedures. Thus the act invoking liability, which was to mislead Tervon Dorsey about the necessity of certain procedure so that he would agree to those services, was within the resulting alleged category of harm. "[W]here the harm is the natural result of the voluntary and intentional acts of the insured, it is not caused by accident, even though the result may have been unexpected, unforeseen, and unintended." *Gandy Dancer*, 864 F. Supp. 2d at 1196. Accordingly, all claims that are not

15

precluded by the professional services exclusion are precluded by the expected or intended benefit exclusion.

For these reasons, Travelers asks the Court to find that the Civil Conspiracy and Joint Venture claim (Count III), the Fraudulent Concealment and Informed Consent Claim (Count IV), the Unfair Practices Claim (Count V), the Prima Facie Tort Claim (Count VI) and the Intentional Infliction of Emotional Distress Claim (Count VIII).

### E. In the absence of coverage there is no duty to defend

In their Counterclaim, the NMBJI Defendants ask the Court to declare that Travelers has an ongoing duty to defend them in the underlying state proceeding. The duty to defend is "determined not by the actual underlying facts of the transaction, as the coverage is, but by the allegations of the injured party's complaint." *State Farm Fire & Cas. Co. v. Ruiz*, 36 F.Supp.2d 1308, 1312 (D. N.M. 1999). Travelers has a duty to defend only if the allegations potentially bring a claim within coverage. *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 19, 399 P.3d 400. Here, the allegations do not bring any of the claims within coverage.

First, the NMBJI Defendants tacitly agree that Travelers do not have the obligation to defend either the Medical Negligence claim (Count I) or the Negligent and Reckless Hiring, Training and Supervision claim (Count II) under the professional health care services exclusion. The NMBJI Defendants argue that none of the other claims fall within that exclusion. While they do not address the expected and intended injury exclusion, as a matter of law, that exception does apply to the remaining five claim—none of them allege an accident with an unintended harm. Rather, all allege a harm which arose out of acts that were intentionally, knowingly, or recklessly deceptive. Thus, all are excluded from coverage under the terms of the Policy.

None of the facts are disputed. As alleged, the policy unequivocally excludes the claims from coverage. An insurer has no duty to defend or indemnify if the allegations clearly fall outside the policy's provisions. *Guaranty Nat'l Ins. Co. v. C. de Baca*, 1995-NMCA-130, ¶ 14, 120 N.M. 806, 907 P.2d 210, 214. Accordingly, Travelers ask the Court to grant is Motion for Judgment on the Pleadings and to deny the NMBJI Defendants' motion.

## **CONCLUSION**

The NMBJI Defendants do not dispute that their Medical Negligence Claims and their Negligent and Reckless Hiring, Training, Supervision Claims fall within the professional health care services exclusion. The remaining five claims in the Complaint also fall within this exclusion because the alleged injuries were due to medical negligence. But should the Court determine that the remaining claims do not fall within the professional services exclusion, they all fall within the Policy's expected and intended injury exclusion because claim arose from the performance of medical services for monetary gain and the resulting harm was foreseeable consequence of the act. Accordingly, Travelers asks the Court to grant its Motion for Judgment on the Pleadings and deny the NMBJI Defendants motion.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
  & SISK, P.A.

By: */s/ Jennifer A. Noya*
Jennifer A. Noya
Shannon N. Nairn
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico  87103-2168
Telephone: (505) 848-1800
*Attorneys for Plaintiff*

WE HEREBY CERTIFY that on this 17th day of April 2024, we filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

| | |
|---|---|
| Mollie C. McGraw<br>McGRAW LAW, LLC<br>165 W. Lucero Ave.<br>Las Cruces, NM 88005<br>505.275.523.4321<br>mollie@lawfirmnm.com<br><br>Allegra C. Carpenter<br>ALLEGRA CARPENTER LAW FIRM, LLC<br>500 Tijeras NW<br>Albuquerque, NM 87102<br>505.340.6069<br>Allegra@Allegra-Law.com<br>*Attorneys for Defendants Tervon Dorsey, Kimberly Dorsey and Kate Ferlic, as Guardian ad Litem for K.D. and J.D. minors* | Elizabeth K. Watson<br>John D. Wheeler<br>JOHN D. WHEELER & ASSOCIATES<br>P.O. Box 1810<br>Alamogordo, NM 88311-1810<br>575.437.5750<br>jdw@jdw-law.com<br>ekw@jdw-law.com<br>*Attorneys for NMBJI, AFLESR, Dr. Spencer, and Dr. Riley* |

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.

By: */s/ Jennifer A. Noya*
       Jennifer A. Noya

*W5042820.DOCX*

18