IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-00027-MV-DLM |
| NEW MEXICO BONE AND JOINT INSTITUTE, P.C., AMERICAN FOUNDATION OF LOWER EXTREMITY SURGERY AND RESEARCH, INC., RILEY RAMPTON, DPM, LOREN K. SPENCER, DPM, TERVON DORSEY, INDIVIDUALLY, KIMBERLY DORSEY, INDIVIDUALLY, AND KATE FERLIC, AS GUARDIAN AD LITEM FOR K.D. AND J.D., MINORS, | § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS/COUNTER-PLAINTIFFS NEW MEXICO BONE AND JOINT INSTITUTE, P.C.'S, RILEY RAMPTON, DPM'S, AND LOREN K. SPENCER, DPM'S REPLY IN SUPPORT OF COUNTER-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants/Counter-Plaintiffs New Mexico Bone and Joint Institute, P.C. ("NMBJI"), Riley Rampton, DPM ("Dr. Rampton"), and Loren K. Spencer, DPM ("Dr. Spencer") (collectively, "the NMBJI Defendants") hereby file this Reply in support of their Counter-Motion for Judgment on the Pleadings, and respectfully state as follows:

**I.
INTRODUCTION**

Travelers's Reply in Support of its Motion and Response to the NMBJI Defendants' Motion ("Travelers's Response") uses broad conclusory statements and self-serving summaries of the claims and allegations asserted in the Dorsey Lawsuit to attempt to escape the unavoidable fact

established in the Counter-Motion: the Dorsey Lawsuit contains allegations that fall outside the scope of the Policy's Health Care Services Exclusion. While Travelers contends that all the claims and allegations in the Dorsey Lawsuit are "actually medical negligence claims,"[1] it does not address (and almost completely ignores) the specific allegations in the Dorsey Lawsuit that trigger coverage. As set forth in the Counter-Motion, there are numerous allegations and claims in the Dorsey Lawsuit that allege conduct that is not based on the medical competence of professionals.[2] These allegations relate to the business and financial relationships of the NMBJI Defendants. Whether or not such a business scheme existed, the financial relationships between the defendants, and the information provided or not provided related to such relationships do not involve the use of or failure to use professional knowledge, skill, experience, or training.

Travelers also does not dispute the case law establishing that UTPA claims by their very nature cannot be based on medical competence. *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 87, 150 N.M. 283, 258 P.3d 1075, 1096 ("unfair practice statutes only apply to the entrepreneurial, commercial, or business aspect of a physician's practice, including advertising, solicitation of business, and billing practices.")  Instead, Travelers appears to focus on the analysis in *Grassie* discussing that certain types of conduct of professionals may constitute medical competence that fall outside the scope of UTPA claims (i.e., the court was analyzing what conduct falls within and outside the scope of UTPA claims in a non-insurance case).  Travelers essentially argues that all the UTPA claims asserted in the Dorsey Lawsuit rely on the actual competence of a medical practitioner and therefore are not proper claims under the statute.  But this goes to the merits of the underlying claim, which is irrelevant to determining the duty to defend. There is no

---

[1] *See* Docket No. No. 33, Travelers's Response at p. 8.
[2] *See* Docket No. 25, NBMJI Defendants' Counter-Motion at p. 15-16.

dispute that the Dorsey Plaintiffs asserted a UTPA claim. The existence of an alleged UTPA claim, which must be based on conduct separate from medical competence to be successful (as the *Grassie* case holds), triggers coverage in this case.

Appearing to realize that its reliance on the professional services exclusion is flawed, Travelers makes the fallback argument that the Policy's expected and intended injury exclusion precludes coverage for the covered claims in the Dorsey Lawsuit. As a threshold matter, Travelers based its Motion solely on the professional services exclusion and cannot now seek to have its Motion granted based on a different exclusion. In any event, the expected and intentional injury exclusion does not preclude Travelers's duty to defend the NMBJI Defendants in the Dorsey Lawsuit.

The express wording of the expected or intended injury exclusion and applicable New Mexico case law establish that this exclusion only applies when the insured intended or expected the actual injury. Thus, even where certain conduct was intentional, the analysis must be focused on whether the specific injury directly flowing from the conduct was intentional or expected. Importantly, Travelers admits that some of the claims asserted in the Dorsey Lawsuit can be based on establishing negligent misrepresentations or other conduct that is not intentional in nature. Thus, Travelers establishes that certain claims alleged in the Dorsey Lawsuit are based on conduct that potentially falls outside the scope of the exclusion, which establishes coverage under New Mexico law.  Even as it relates to certain administrative and business conduct that the Dorsey Plaintiffs allege was intentional, Travelers completely ignores that the Dorsey Plaintiffs do not allege that NMBJI Defendants intended or expected to cause injuries to Mr. Dorsey (nor were such injuries expected or intended by the insureds). The exclusion therefore does not preclude coverage for Travelers's defense obligation.

## II.
## REPLY ARGUMENT AND AUTHORITIES

**A. Travelers Incorrectly Concludes that all the Claims and Allegations in the Dorsey Lawsuit are Medical Negligence Claims.**

In its Response, Travelers appears to acknowledge that the Professional Health Care Services Exclusion only applies to medical malpractice claims where the proof of "alleged injury requires evidence concerning the competence of a medical practitioner."[3] To attempt to fit all the allegations in the Dorsey Lawsuit within the exclusion, Travelers argues that all the claims in the Dorsey Lawsuit "are actually medical negligence claims."[4] This argument is misplaced for two main reasons.

First, Travelers ignores the numerous allegations in the Dorsey Lawsuit that do not allege medical negligence claims. As pointed out by the NMBJI Defendants in their Motion, there are specific allegations in the Dorsey Lawsuit that relate to alleged administrative acts, business decisions, and other acts that were not necessary for a medical professional to use his specialized knowledge or training.[5] Tellingly, Travelers failed to address each of these allegations, but instead it attempts to dismiss these allegations by improperly classifying them as "medical negligence claims." The self-serving, wholesale classification of these allegations as malpractice claims ignores that these claims are based on the alleged improper business scheme of the NMBJI Defendants (along with AFLESRI) and failure to disclose the financial relationships between the parties.

Travelers's classification of these claims as medical negligence claims further ignores that the elements necessary to prove the claims for UTPA violations do not depend on the quality of

---

[3] *See* Docket No. No. 33, Travelers's Response at p. 5.

[4] *See* Docket No. No. 33, Travelers's Response at p. 9.

[5] *See* Docket No. 25, NBMJI Defendants' Counter-Motion at pp. 15-16.

medical care. Instead, these allegations create standalone claims for the Dorseys unrelated to the actual medical care provided, including under Section 57-12-2(d)3 of the New Mexico Unfair Practices Act. The UTPA "is designed to provide a remedy against misleading identification and false or deceptive advertising." *Grassie* 258 P.3d at 1094. The Dorseys base the alleged violation of Section 57-12-2(d)3 on the NMBJI Defendants causing confusion and misunderstanding as to their affiliation, connection and association with each other—not medical care. [6]

Second, Travelers does not contest the clear case law establishing that UTPA claims cannot be based on the medical competence of the doctors and nurses. Specifically, Travelers does not dispute that courts in New Mexico and other jurisdictions have found that claims under unfair practices acts do not include medical negligence and malpractice claims, but instead only provide a remedy for the commercial or entrepreneurial aspects of a doctor's practice. *Grassie*, 258 P.3d at 1096 ("Thus, the [UTPA] issues are separate enough from the questions of the actual medical competence of the doctors and nurses to allow the [UTPA] claims to proceed.").

Realizing that the Court's analysis in *Grassie* is fatal to its argument that all the claims in the Dorsey Lawsuit are medical negligence claims, Travelers cites *Grassie* to argue that the UTPA claims in the Dorsey Lawsuit lack merit because the conduct alleged related to administrative claims are inextricably tied to the medical negligence claims. The language from *Grassie* that Travelers cites in its Response relates to the court's analysis in *Grassie* regarding whether the allegations fell within or outside the scope of a UTPA claim:[7]

> "Accordingly, the Court concluded that to determine whether a UPA claim could lie against a medical provider depended 'on whether the medical negligence and UPA claims are coterminous or indistinguishable; that is whether they rely on the same facts and rely on a judgment as to the actual competence of the medical

---

[6] *See* Docket No. 1, Travelers's Complaint for Declaratory Relief, Exhibit B, the Dorsey Lawsuit at ¶ 97.
[7] *See* Docket No. No. 33, Travelers's Response at p. 12.

practitioner for resolution. If they do, a UPA claim is not appropriate.' *Id.* at 1095-96."

In *Grassie*, the court was analyzing the merits of whether a UTPA claim could be asserted against a medical provider in a non-insurance case. *Grassie*, 258 P.3d at 1096 ("Resolution of the question whether the advertising materials were materially misleading does not rely on the actions of the medical personnel on the day Mr. Grassie died. Thus, the UPA issues are separate enough from the questions of the actual medical competence of the doctors and nurses to allow the UPA claims to proceed."). Here, there is no dispute that the Dorsey Plaintiffs have asserted a UTPA claim in the Dorsey Lawsuit. For the Dorsey Plaintiffs to prevail on this claim, they must establish conduct that does not relate to the professional competence of medical providers. This fact alone establishes coverage for the duty to defend in this case. Travelers's argument as to whether the Dorsey Plaintiffs' UTPA claims have merit or not is irrelevant for the coverage analysis. *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017) ("If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, **the insurer has a duty to defend regardless of the ultimate liability of the insured**.") (emphasis added). Thus, the presence of this alleged claim defeats Travelers's argument that the Policy's Health Care Services Exclusion precludes coverage for all the claims asserted in the Dorsey Lawsuit.

**B. Travelers Cannot Rely on the Policy's Expected and Intended Injury Exclusion to Preclude Coverage.**

Apparently concluding that its arguments related to the Professional Health Care Services are flawed, Travelers contends that the Policy's expected and intended injury exclusion precludes coverage for any remaining covered claims. As a threshold matter, Travelers cannot rely on this exclusion in support of its own motion for judgment on the pleadings because it was not raised in its initial motion (while Travelers referenced the exclusion in its complaint, it did not rely on the

exclusion in its motion). *Gonzales v. New Mexico Dep't of Health*, No. 1:22-CV-00525-WJ-SCY, 2023 WL 2601500, at *8 n. 3 (D.N.M. Mar. 22, 2023) ("Defendants also raises for the first time in their Reply Brief the question of whether Mr. Gonzales's WPA claim may be pre-empted by the FMLA. Doc. 14 at 8 n.1. The Court will not address arguments raised for the first time and only briefly in Reply.") (citing *In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1113 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.")); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Even if the Court considers the merits of this argument for purposes of Travelers's Response to the NMBJI Defendants Counter-Motion, Travelers's reliance on the exclusion is misplaced because Travelers: (a) ignores the clear wording of the exclusion and how courts applying New Mexico law have interpreted the scope of similar such exclusions, and (b) concedes that certain claims asserted in the Dorsey Lawsuit can be based on negligent conduct that is not intentional, which is fatal to Travelers's reliance on the exclusion.

As a threshold matter, Travelers ignores that the exclusion states it only applies to "bodily injury or property damage expected or intended from the standpoint of the insured." Thus, by its own clear language, the exclusion applies only if the injury itself was intentional. Courts applying New Mexico law have likewise adopted the majority approach wherein an "insured's act is not accidental only if the insured 'intended both the act **and to cause some kind of injury or damage**.'" *Mid-Continent Cas. Co. v. Circle S Feed Store*, LLC, 754 F.3d 1175, 1181 (10th Cir. 2014) (emphasis added) (holding that, under New Mexico law, subsidence and damages that mining company's negligence caused to neighboring property as a result of its solution mining activities did not fall within the scope of a CGL policy's intentional injury exclusion). Thus, if the

event causing the injury is intended, there is still an occurrence that falls outside the scope of the exclusion if the party committing the act did not intend to cause the injury (i.e., the injury did not flow directly and immediately from its intentional act). *Scott v. New Empire Ins. Co.*, 75 N.M. 81, 400 P.2d 953-956 (1965) (holding that the insured was entitled to coverage where the decedent's acts of driving the car and exceeding the speed limit were presumably intentional but the fatal collision was unintended)[8]; see also *Proassurance Specialty Ins. Co., Inc. v. Familyworks, Inc.*, 599 F. Supp. 3d 1082, 1094–95 (D.N.M. 2022) ("The Court concludes that the underlying complaints against Familyworks allege an 'occurrence' within the meaning of the policies. Although the state court plaintiffs allege that Familyworks intentionally placed the children with the Garcias, none allege that Familyworks intended the resulting sexual abuse.").

Here, Travelers admits that there are certain claims and allegations asserted in the Dorsey Lawsuit where the underlying Dorsey Plaintiffs would not have to show that either the conduct or resulting injury was intended or expected by the NMBJI Defendants (or that it is not clear from the pleading what conduct formed the basis of the claim):[9]

- "To prove a claim of civil conspiracy, the Dorsey will have to show a conspiracy between two or more individuals, that wrongful acts were done for the purposes of the conspiracy and that the plaintiff was damaged as a result. *Bauer v. College of Santa Fe*, 2003-NMCA-121, ¶ 16, 134 N.M. 439, 78 P.3d 76, 80 (citation omitted). Although the Dorseys do not identify which tort they tie to their civil conspiracy claim, the allegations suggest that it is what they call 'fraudulent concealment' or fraud. *See* Doc. 1-2 ¶¶ 83-84 . . . . The Dorseys fraud claims could fall into one of two categories, intentional fraud or **negligent misrepresentation**."

---

[8] The court found that the plaintiff's decedent was entitled to coverage for "accidental death" even though he was driving at a high rate of speed before the fatal collision. Although the decedent received a traffic ticket for speeding on the same night and his passenger complained about the speed of his driving, the court found no evidence that the result—i.e., his death—was "voluntarily self-inflicted." In other words, although the decedent's acts of driving the car and exceeding the speed limit were presumably intentional, he was nevertheless entitled to coverage because the result, i.e., the fatal collision, was unintended.

[9] *See* Docket No. No. 33, Travelers's Response at p. 14, 16.

- "For similar reasons, this exclusion also precludes the UPA claims. . . . . In the underlying proceeding, the Dorseys do not identify a specific statement that precipitated this claim."

These admissions as to what is alleged in the Dorsey Lawsuit defeat Travelers's reliance on the expected or intended injury exclusion because, at a minimum, it is not clear whether the resulting injury was expected or intentional. While Travelers attempts to argue that the allegations suggest a potentially intentional or expected intent, this inference and interpretation against the finding of a duty to defend is explicitly prohibited under New Mexico law. New Mexico courts have held that an insurer must defend "when the complaint filed by the claimant alleges facts potentially within the coverage of the policy." *Proassurance*, 599 F. Supp. 3d at 1094–95 (holding that the claims and their allegations do not "clearly fall outside the provisions" of the policy); *see also N.M. Physicians Mut. Liab. Co. v. LaMure*, 116 N.M. 92, 860 P.2d 734, 737 (1993); *Am. Gen. Fire & Casualty Co. v. Progressive Casualty Co.*, 110 N.M. 741, 799 P.2d 1113, 1116 (1990) ("The duty of an insurer to defend arises from the allegations on the face of the complaint . . . that brings it *arguably* within the scope of coverage." (emphasis added)); *Dove*, 399 P.3d at 404.

Likewise, there is a duty to defend when the facts in the complaint "are not stated with sufficient clarity so that it can be determined from the face of the complaint whether the action falls within the coverage of the policy." *Dove*, 399 P.3d at 404. "Any doubt about whether the allegations are within policy coverage is resolved in the insured's favor." *Id.* at 405. Travelers cannot interpret the claims and allegations in its favor to bring the allegations within the scope of the exclusion.

As it relates to other alleged administrative or business activities, Travelers focuses on the fact that the Dorsey Plaintiffs allege these administrative and business activities were intentional. But Travelers completely ignores that there is no allegation for each of these acts that the NMBJI

Defendants expected or intended to cause bodily injury to Dorsey. Thus, even if the NMBJI Defendants expected or intended to fail to disclose their business relationships or other information about financial incentives, there are no allegations or anything to suggest that they intended to cause bodily injury to Dorsey. The Dorsey Plaintiffs do not allege that the defendants intended or expected to injure Dorsey. It takes a giant leap to conclude the insureds would know that committing the alleged acts related to not disclosing financial or business information as part of any advertising effort would result in bodily injury to someone. *Mid-Continent Cas. Co.*, 754 F.3d 1175, 1182 ("No evidence in the record suggests I & W knew that damages to Circle S's property 'would flow directly and immediately from its intentional act.'"); *Sena v. Travelers Ins. Co.*, 801 F. Supp. 471, 476 (D.N.M.1992) (holding the injury must be the "direct, natural result" of an "inherently harmful" act for a court to find the injury outside the scope of coverage); Eric Mills Holmes, *Appleman on Insurance* 2d (archive file) § 117.4 ("For purposes of determining whether recovery can be had under an 'accident' provision of a liability policy, the resulting damage can be unintentional and therefore accidental even though the original acts were intentional.")(cited by the court in *Mid-Continent*).

      Travelers concludes that because the intended act resulted in Dorsey agreeing to come to the clinic, the insureds intended or expected the injury (the alleged harm, however, is bodily injury).  There is no allegation that the insureds intended or expected to injure Dorsey.  Travelers's conclusion is inconsistent with the case law discussed above.  At a minimum, there is lack of clarity or specificity regarding whether the injury was expected or intended by the insureds, which creates a duty to defend. *Dove*, 399 P.3d at 404 ("Any doubt about whether the allegations are within policy coverage is resolved in the insured's favor.").

## III.
## PRAYER

WHEREFORE, the NMBJI Defendants ask the Court to grant their Counter-Motion for Judgment on the Pleadings, deny Plaintiff's Motion for Judgment on the Pleadings, and for all such relief to which the NMBJI Defendants are entitled to, at law or in equity.

Date: May 1, 2024.                                          Respectfully submitted,

**JOHN D. WHEELER & ASSOCIATES, P.C.**
A Professional Corporation

*/s/ Elizabeth K. Watson*
Elizabeth K. Watson
John D. Wheeler
Post Office Box 1810
Alamogordo, NM 88311
Telephone:  (575) 437-5750
Telecopy:  (575) 437-3557
jdw@jdw-law.com
ekw@jdw-law.com

*-and-*

*/s/ Noah H. Nadler*
Noah H. Nadler
Texas State Bar No. 24065806
noah.nadler@wickphillips.com
*Admitted pro hac vice*
Stafford P. Brantley
Texas State Bar No. 24104774
stafford.brantley@wickphillips.com
*Admitted pro hac vice*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
Telephone:  (214) 692-6200
Fax:           (214) 692-6255

**ATTORNEYS FOR DEFENDANTS NEW MEXICO BONE AND JOINT INSTITUTE, P.C., RILEY RAMPTON, DPM, AND LOREN K. SPENCER, DPM**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served on the counsel of record in accordance with the Federal Rules of Civil Procedure on May 1, 2024.

*/s/ Noah H. Nadler*
Noah H. Nadler