**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

       Plaintiff,

v.                                   No. 2:24-cv-0027 MV/DLM

NEW MEXICO BONE AND JOINT INSTITUTE,
P.C.; AMERICAN FOUNDATION OF LOWER
EXTREMITY SURGERY AND RESEARCH, INC.,
a New Mexico Corporation; RILEY RAMPTON, DPM;
LOREN K. SPENCER, DPM; TERVON DORSEY,
individually; KIMBERLY DORSEY, individually; and
KATE FERLIC as GUARDIAN AD LITEM for K.D.
and J.D., minors,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Before the Court is an insurance coverage dispute. Travelers Casualty Insurance Company
of America (Travelers) issued a Commercial General Liability Policy (CGL Policy) to the New
Mexico Bone and Joint Institute, P.C. (NMBJI). The CGL Policy covers NMBJI and two of its
physicians (the CGL Policy Insureds) but contains a Professional Health Care Services exclusion
that bars coverage for claims arising from medical treatment, advice, or instruction. Tervon Dorsey
was allegedly injured after being treated at NMBJI. Together with his family (the State Plaintiffs),
Dorsey filed suit against NMBJI and others in New Mexico state court,[1] and Travelers is providing
a defense under a reservation of rights. Travelers asks this Court to find that it owes no duty to

---

[1] The State Plaintiffs include Tervon Dorsey, Kimberly Dorsey, and Kate Ferlic, as guardian ad litem for K.D. and
J.D., minors. The State Plaintiffs named the CGL Policy Insureds and the American Foundation of Lower Extremity
Surgery and Research, Inc. (AFLESR) as defendants. (*See* Doc. 1-2 at 1.) The Court refers to the CGL Policy Insureds
and AFLESR collectively as the State Defendants.

defend the CGL Policy Insureds in the state lawsuit.

The state lawsuit involves medical negligence and related claims, including claims brought under the New Mexico Unfair Practices Act (UPA). Travelers contends that all claims arise out of medical treatment, advice, or instruction and are thus barred by the CGL Policy's Professional Health Care Services exclusion. The CGL Policy Insureds and the State Plaintiffs disagree and argue that the UPA claims are grounded in business decisions unrelated to the physicians' specialized knowledge or training. Travelers and the CGL Policy Insureds have filed cross-motions for judgment on the pleadings. (Docs. 3; 25.) At the heart of this dispute is a discrete issue: whether the State Plaintiffs adequately asserted claims under the UPA that do not implicate the physicians' medical competence. If they did, then the policy exclusion does not apply, and Travelers must continue to defend the CGL Policy Insureds. If they did not, and their UPA claims only involve medical negligence, then the policy exclusion applies, and Travelers is not obligated to defend the state lawsuit.

Having considered the parties' arguments and the relevant law, I find the State Plaintiffs have adequately pleaded claims under the UPA that do not involve the physicians' medical competence, thereby requiring Travelers to continue defending the CGL Policy Insureds. I recommend **DENYING** Travelers' motion (Doc. 3) and **GRANTING** the CGL Policy Insureds' motion (Doc. 25).[2] I further recommend **DENYING** the State Plaintiffs' motion to strike. (Doc. 21.)

---

[2] Senior United States District Judge Martha Vázquez entered an Order of Reference on January 27, 2025, referring the pending cross-motions to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 50 at 1.)

## I.      Factual Background

Travelers is a Connecticut insurance company doing business in New Mexico. (Docs. 1 ¶ 1; 24 ¶ 1.) NMBJI "is a New Mexico professional corporation" that employs podiatric physicians Drs. Rampton and Spencer. (*See* Docs. 1 ¶¶ 2, 4–5, 13; 24 ¶¶ 2, 4–5, 13.[3]) American Foundation of Lower Extremity Surgery and Research, Inc. (AFLESR) is a non-profit that "provides fellowships, scholarships, and research opportunities for those interested in advancing their medical education." (*See* Docs. 1 ¶¶ 3, 26; 24 ¶¶ 3, 26.) To support its mission, AFLESR sponsors medically trained fellows who work at NMBJI. (*See* Docs. 1 ¶ 26; 24 ¶ 26.) Spencer is the Treasurer of NMBJI and the Director and the President of AFLESR. (*See* Doc. 1-2 ¶ 7.)

Travelers issued the CGL Policy to NMBJI for the coverage period from January 3, 2020, through January 3, 2021. (Docs. 1 ¶ 14; 2 ¶ 14; *see also* Doc. 1-1 at 2.) The parties agree that the CGL Policy covers NMBJI, Rampton, and Spencer as insureds, but not AFLESR.[4] (*See* Docs. 3 at 8–9; 25 at 13.) The CGL Policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that "is caused by an 'occurrence' that takes place in the 'coverage territory'" and "during the policy period . . . ." (Docs. 1 ¶ 16; 24 ¶ 16; *see also* Doc. 1-1 at 91.) It also contains a "Professional Health Care Services" exclusion, which excludes coverage for "'[p]ersonal injury' or 'advertising injury' arising out of providing or failing to provide 'professional health care services.'" (*See* Docs. 1 ¶ 22; 24 ¶ 22; *see also* Doc. 1-1 at 122.) The CGL Policy defines professional health care services, in relevant part, as "medical, surgical, . . . or nursing services, treatment, advice or instruction . . . ." (*See* Docs. 1 ¶ 23; 24 ¶ 23;

---

[3] Although the State Defendants do not explicitly admit that Rampton and Spencer are "employees" of NMBJI (*see* Doc. 24 ¶ 13), the distinction is not relevant to the parties' motions.

[4] To the extent Travelers asks the Court to find that AFLESR is not an insured under the policy, that request is moot. (*See* Doc. 3 at 8–9.)

*see also* Doc. 1-1 at 122.)

In relevant part, the state complaint asserts that Tervon Dorsey saw Dr. Spencer for podiatry consultations on October 4, 2019, and April 7, 2020. (Doc. 1-2 ¶¶ 39, 47.) Thereafter, Dr. Spencer and two AFLESR fellows performed surgery on Dorsey's left ankle on February 5, 2020, and on his right ankle on May 27, 2020. (*Id.* ¶¶ 45, 48.) Dorsey alleges he was not informed that the AFLESR fellows would be present at or participate in the surgeries, nor was he told that "Dr. Spencer had a relationship through AFLESR with fellow, Dr. Riley." (*See id.* ¶¶ 40, 49.) Dorsey further asserts that Dr. Rampton, an AFLESR fellow, performed a faulty nerve block cortisone injection on Dorsey's right ankle without supervision on April 11, 2020, further injuring Dorsey. (*See id.* ¶¶ 10, 40, 52–53, 56.)

The State Plaintiffs filed suit in state court on July 31, 2023. (*See id.* at 1.) *See also Dorsey v. N.M. Bone & Joint Inst.*, D-101-CV-2023-01753 (N.M. 1st Jud. Dist. Ct., July 31, 2013). They allege that the State Defendants "were engaged in a joint venture/enterprise" with the "shared interest and objectives in having their health care providers . . . perform hasty medical work that fulfilled fellowship criteria and led to company profits, but that were not properly supervised." (Doc. 1-2 ¶¶ 16–17.) The State Plaintiffs maintain that "AFLESR fellows effectively provide low cost labor to NMBJI in exchange for fellowship credentialing." (*See id.* ¶ 41.) The State Plaintiffs further contend that the State Defendants made "coordinated medical recommendations to Tervon Dorsey that were motivated by profit and [to create] surgical procedure opportunities for fellows of AFLESR, instead of ensuring the recommendations for intervention were in the best interest of [Dorsey] . . . ." (*See id.* ¶ 66(a).) According to the State Plaintiffs, the State Defendants hid their "financial biases from [Dorsey] by not informing him that the surgery[ies] and procedures would be used to create opportunities for fellows through AFLESR over which Dr. Spencer had a

4

financial interest via NMBJI." (*Id.* ¶ 66(b).) Put another way, the State Plaintiffs maintain that Defendants acted to protect their own "financial interests at the expense of [Dorsey's] welfare." (*Id.* ¶ 67.)

The state complaint includes claims for: (1) medical negligence and recklessness (Doc. 1-2 ¶¶ 65–68); (2) negligent and reckless hiring, training, supervision, retention, policies, and disclosures (*id.* ¶¶ 69–75); (3) civil conspiracy and joint venture (*id.* ¶¶ 76–87); (4) fraudulent concealment and lack of informed consent (*id.* ¶¶ 88–92); (5) unfair trade practices under the UPA, N.M. Stat. Ann. §§ 57-12-1–26 (*id.* ¶¶ 93–103); (6) prima facie tort (*id.* ¶¶ 104–07); (7) intentional infliction of emotional distress (*id.* ¶¶ 108–10); (8) loss of consortium (*id.* ¶¶ 111–21); and (9) proximate cause and damages, including loss of chance and punitive damages (*id.* ¶¶ 122–26).

Although Travelers contends that the State Plaintiffs' claims are excluded from coverage by the Professional Health Care Services exclusion, it nevertheless commenced defense of the state lawsuit under a reservation of rights. (*See* Docs. 1 ¶ 41; 24 ¶ 72.) On January 9, 2024, Travelers filed this Complaint for Declaratory Relief and asks the Court to declare that Travelers has no duty to defend or indemnify the CGL Policy Insureds in the underlying state lawsuit. (*See* Doc. 1 at 1, 11.) The State Defendants filed an Answer and Counterclaim. (Doc. 24.) Travelers now moves for judgment on the pleadings (Doc. 3); the State Plaintiffs move to strike Travelers' motion as untimely (Doc. 21); and the CGL Policy Insureds move for judgment on the pleadings (Doc. 25).

## II.    Legal Standard

### A.    Motions for Judgment on the Pleadings

Under Federal Rule 12(c), the appropriate time for "a party [to] move for judgment on the pleadings" is "[a]fter the pleadings are closed–but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to

dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citation omitted). Accordingly, the Court accepts as true all well-pleaded allegations and "construe[s] them in the light most favorable to the non-moving party." *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999) (citation omitted); *see also, e.g.*, *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (the grant of defendant's motion for judgment on the pleadings is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief") (quotation omitted).

     **B.    Relevant New Mexico Insurance Law**

     New Mexico substantive law governs the issue of whether Travelers has a duty to defend the CGL Policy insureds. *See Liberty Mut. Fire Ins. Co. v. Lyons*, 489 F. Supp. 3d 1242, 1247 (D.N.M. 2020), *aff'd*, No. 20-2152, 2021 WL 4592269 (10th Cir. Oct. 6, 2021). In New Mexico, courts treat insurance policies as ordinary contracts and construe them "according to customary principles of contract interpretation." *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, 519 F. Supp. 3d 1006, 1010 (D.N.M. 2021) (quoting *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013)). To determine whether an insurance company must defend an insured client against a lawsuit, courts "compar[e] the factual allegations in the complaint with the insurance policy." *Lyons*, 489 F. Supp. 3d at 1247 (quoting *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994)). If the claimant's complaint "alleges facts potentially within the coverage of the policy[,]" then the insurer has an obligation to defend its insured. *Id.* (quoting *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017)). This is true "even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an

occurrence within the coverage." *Id.* (quoting *Am. Emps. Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)). Of course, an insurer is not obligated "to defend if the allegations in the complaint clearly fall outside the policy's provisions." *Id.* (quoting *Guaranty Nat'l Ins. Co. v. C de Baca*, 907 P.2d 210, 214 (N.M. Ct. App. 1995)). "[T]he insurer bears the burden of proving that there is no duty to defend, and any doubt about whether the allegations are within the policy coverage is resolved in the insured's favor." *Id.* (quoting *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1274 (D.N.M. 2019)).

## III.    The Court should deny the State Plaintiffs' request to strike Travelers' premature motion.

The State Plaintiffs ask the Court to strike Travelers' motion for judgment on the pleadings as premature given that Travelers filed its motion before any defendant entered an appearance. (*See* Doc. 21 at 2–4.) I agreed the motion did not comply with the timing outlined in Federal Rule of Civil Procedure 12(c), which provides that a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed . . . ." In the future, counsel for Travelers should review and follow the relevant rules to avoid wasting the time and energy counsel spent (and the parties will ultimately pay for) arguing unnecessarily about whether the motion was untimely. Given that the pleadings have now closed and the motion is ripe, I recommend denying the State Plaintiffs' request to strike Travelers' motion as premature.

## IV.    The Court should deny Travelers' motion and grant the CGL Policy Insureds' motion.

"The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices." *Begay v. Medicus Healthcare Sols., LLC*, No. CV 15-500 JCH/SCY, 2015 WL 13650107, at *4 (D.N.M. Nov. 18, 2015) (quoting *Valdez v. Metro. Prop. & Cas. Ins. Co.*, No. CIV 11-0507 JB/KBM, 2012 WL 1132414, at *19 (D.N.M. Mar. 31, 2012)).

Count V of the state complaint alleges that the State Defendants violated the UPA by providing medical care to Tervon Dorsey that prioritized the State Defendants' financial interests over Dorsey's medical needs. (Doc. 1-2 ¶ 95; *see also id.* ¶ 66(a) (Defendants' recommendations "were motivated by profit and [to create] surgical procedure opportunities for fellows of AFLESR").) Specifically, the State Plaintiffs allege that the State Defendants "'knowingly' [made] 'false or misleading oral or written statements . . . in connection with the sale' of their medical services, which did 'tend to or deceive' Tervon Dorsey" in violation of N.M. Stat. Ann. § 57-12-2(D)(3) ("causing confusion or misunderstanding as to affiliation, connection or association with or certification by another"), (D)(14) ("using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive"), (D)(16) ("stating that services, replacements or repairs are needed if they are not needed"), and (E) ("unconscionable trade practice"). (*See* Doc. 1-2 ¶¶ 96–100.) The CGL Policy Insureds disagree and argue that many of the State Plaintiffs' allegations, including those related to their UPA claims,[5] arise from business decisions and not from the provision of professional health care services and thus fall within the CGL Policy's coverage. (*See* Doc. 25 at 3.[6])

Both Travelers and the CGL Policy Insureds rely on *Grassie v. Roswell Hospital Corp.*, 258 P.3d 1075 (N.M. Ct. App. 2010) to support their positions. In *Grassie*, the New Mexico Court of Appeals opined that a plaintiff may properly assert a claim against a physician under the UPA if the claim relates to "practices used to promote the entrepreneurial aspects of a doctor's practice" and does not hinge on "the 'actual competence of the medical practitioner . . . .'" *See id.* at 1095

---

[5] The parties primarily focus on Count V and the UPA claims. (*See* Docs. 21; 25; 33.)

[6] Although the State Plaintiffs' response brief is not fully fleshed out, it appears they agree with the CGL Policy Insureds' position with respect to this issue. (*See* Doc. 21 at 5.)

(quoting *Quimby v. Fine*, 724 P.2d 403, 406 (Wash. Ct. App. 1986)). Travelers argues that Dorsey's claims implicate the competence of the defendant physicians. (*See* Doc. 33 at 6.) It contends that the UPA claims allegedly "arose out of medical negligence," and thus "each claim is implicitly a medical negligence claim." (*See id.*) The CGL Policy Insureds, on the other hand, argue that the claims are not related to the physicians' medical competence, but instead concern "commercial or entrepreneurial aspects of [the] practice." (*See* Doc. 25 at 20 (citing *Grassie*, 258 P.3d 1096) (subsequent citations omitted).)

The question becomes whether the State Plaintiffs have alleged sufficient facts to show that the CGL Policy Insureds' conduct related "to the entrepreneurial, commercial, or business aspect of [their] practice . . . ." *See Grassie*, 258 P.3d at 1095 (citation omitted). Travelers is adamant that the UPA claims are "tied to a bodily injury" related to an alleged breach in the standard of care. (*See* Doc. 33 at 5.) I disagree and find guidance in two cases.[7] First, in *Quimby v. Fine*, a Washington state case the *Grassie* court cited favorably, the plaintiff brought a claim against her physician under Washington's Consumer Protection Act (WA CPA) on the basis that the physician performed a procedure without advising her of the risks or alternatives. *See Quimby*, 724 P.2d at 404. As here, the plaintiff's injuries were, at bottom, physical. *See id.* Importantly, the *Quimby* court found that medical negligence or malpractice claims—those premised on a practitioner's competence—"are exempt from the [WA CPA,]" just like in New Mexico. *See id.* at 406. But the *Quimby* court went on to hold that a "lack of informed consent claim against a healthcare provider may be within the scope of the [WA CPA] if it relates to the entrepreneurial aspects of the medical practice[,] . . . such as when the doctor promotes an operation or service to

---

[7] Neither party identified authority on point from New Mexico or the Tenth Circuit, nor could the Court locate any pertinent authority.

increase profits and the volume of patients, then fails to adequately advise the patient of risks or alternative procedures." *Id.*

In *Wright v. Jeckle*, another Washington state case, the plaintiff sued on the basis that her physician's advertising, marketing, and sale of a diet drug "were done as part of the entrepreneurial aspect of his practice." *See* 16 P.3d 1268, 1269 (Wash. App. 2001), *as amended on reconsideration in part* (Mar. 6, 2001). The *Wright* court opined "that not all aspects of the physician/patient relationship constitute health care." *Id.* at 1271. "[T]he mere fact that advice is given, or representations are made, does not rule out the possibility that they may in fact implicate the entrepreneurial aspects of the professional relationship." *Id.* And because the plaintiff "specifically alleged [the physician] engaged in improper entrepreneurial activities that were motivated by financial gain—financial gain only[,]" the *Wright* court found the action was properly brought under the WA CPA. *See id.* "Whether [the physician] ha[d] in fact engaged in entrepreneurial activities" that violated the WA CPA was "a question of fact." *See id.*

Similarly, here, the UPA claims do not rely on the CGL Policy Insureds' medical recommendations, but instead on the alleged motivations underlying those recommendations. According to the state complaint, the UPA claims are not grounded in the "medical treatment, advice, or instruction" itself, but instead are premised on the State Defendants' entrepreneurial or commercial decisions that were allegedly motivated by a desire for financial gain. (*See* Doc. 1-2 ¶ 66(a) (asserting that Defendants made recommendations "that were motivated by profit and [to create] surgical procedure opportunities for fellows of AFLESR").) In other words, the State Defendants did not utilize their professional medical skills and knowledge when they recommended treatment options to Dorsey. *See Reed v. ANM Health Care*, 225 P.3d 1012, 1015 (Wash. App. 2008) ("The key question in determining whether an injury occurs as a result of health

care is whether the injury occurs during the process in which [a medical professional is] utilizing the skills which [the professional has] been taught in examining, diagnosing, treating or caring for the patient.") (quotation marks and citation omitted); *see also Wright*, 16 P.3d at 1271 ("Entrepreneurial activities . . . are not health care[,]" because "[t]hey do not involve the process in which [a physician is] utilizing the skills which he [or she] had been taught in examining, diagnosing, treating or caring for the plaintiff as his [or her] patient.") (quotation marks and citation omitted). Thus, I find these allegations fall outside the CGL Policy's definition of professional health care services and are properly pleaded under the UPA.

The decision in *Gadson v. Newman*, 807 F. Supp. 1412 (C.D. Ill. 1992) is also instructive. There, "a federal court allowed a claim under the Illinois Consumer Fraud Act to proceed when the plaintiff alleged that the defendant psychiatrist had an undisclosed contract with a hospital that included financial incentives, self[-]referrals, and increased billings." *See Dorn v. McTigue*, 121 F. Supp. 2d 17, 20 (D.D.C. 2000) (discussing *Gadson*, 807 F. Supp. at 1420). In other words, the *Gadson* plaintiff alleged that the defendants were making medical recommendations motivated by financial gain obtained via undisclosed contracts. *See Gadson*, 807 F. Supp. at 1420; *cf. Darviris v. Petros*, 812 N.E.2d 1188, 1194 (Mass. 2004). The Court faces a similar issue here: the resolution of Count V depends on whether the CGL Policy Insureds made their recommendations to Dorsey based on their medical expertise or their financial interests.[8] And "[w]hether [the CGL Policy Insureds have] in fact engaged in entrepreneurial activities which violate the [UPA] is a question

---

[8] Travelers argues that "when determining what constitutes professional services," the Court must "look . . . to the act itself." (Doc. 33 at 9 (quoting *Millers Cas. Ins. Co. of Tex. v. Flores*, 876 P.2d 227, 229–30 (N.M. 1994)).) Travelers insists that the acts at issue here involve allegations that the physicians "intentionally concealed their relationship with" AFLESR and the fellows, the competency of the providers, and the necessity of the procedures. (*Id.*) The acts *also* involve allegations that the physicians made business decisions based on their own financial interests rather than on the needs of their patients. *Millers* does not detract from my recommendations.

of fact." *See Wright*, 16 P.3d at 1271.

Having analyzed the State Plaintiffs' claims under the above framework, I find that Count V of the state complaint is properly brought under the UPA, as it implicates alleged business decisions. Consequently, the Professional Health Care Exclusion does not apply to bar coverage for the claim, as the basis for Count V does not rely on "professional health care services" as outlined in the CGL Policy. (*See* Doc. 1-1 at 122.) Because the state complaint "alleges facts potentially within the coverage of the policy[,]" Travelers has an obligation to defend its insureds. *See Dove*, 399 P.3d at 404 (quotation and citation omitted). I recommend the Court deny Travelers' motion and grant the CGL Policy Insureds' motion.

Two other issues require further discussion. First, Travelers makes much of the fact that Dorsey's damages are all attributable to the physical injury he suffered. (*See* Docs. 3 at 12–13; 33 at 13.) Yet the UPA authorizes recovery for "actual damages or the sum of one hundred dollars ($100), whichever is greater." *See Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1099 (N.M. Ct. App. 2007) (quoting N.M. Stat. Ann. § 57-12-10(B)). "[T]he New Mexico Supreme Court has applied Section 57-12-10(B) as the basis for an award of the statutory $100 minimum, even in the absence of proof of economic or property loss." *Id.* (citing *Page & Wirtz Constr. Co. v. Solomon*, 794 P.2d 349, 354–55 (N.M. 1990); *Jones v. Gen. Motors Corp.*, 953 P.2d 1104, 1109 (N.M. Ct. App. 1998) ("[i]n the absence of actual losses, [a] [p]laintiff is still entitled under [the] UPA to recover the statutory damages of one hundred dollars")). Thus, the State Plaintiffs have no obligation to allege some other actual loss under the UPA to maintain their claims.

Finally, in its reply brief, Travelers raises a new argument for the first time that coverage is precluded by another policy exclusion based on expected and intended injuries. (*See* Doc. 33 at 13; *see also* Docs. 1-1 at 92; 25 at 13–14 (noting that "Travelers'[] sole argument for seeking relief

in its Motion rests on its position that the Policy's Professional Health Care Services Exclusion precludes coverage for all of the Dorseys' claims.") (citation omitted).) "Since a request for relief must be raised in a motion, *see* Local Rule 7.1," I recommend the Court treat this new argument as waived and decline to address it. *See Hatten-Gonzales v. Scrase*, No. CIV 88-0385 KG/CG, 2023 WL 4976179, at *1 (D.N.M. Aug. 3, 2023) (citing *United States v. Hodges*, 684 F. App'x 722, 728 (10th Cir. 2017) (finding that movant waived argument he did not raise until reply brief); *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (noting court will not ordinarily review issues raised for first time in reply brief)).

**IT IS HEREBY RECOMMENDED** that the State Plaintiffs' Motion to Strike (Doc. 21) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Travelers' Motion for Judgment on the Pleadings (Doc. 3) be **DENIED** and the CGL Policy Insureds' Counter-Motion for Judgment on the Pleadings (Doc. 25) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Court STAY this matter pending resolution of the underlying state lawsuit;

**IT IS FURTHER RECOMMENDED** that the Court require the parties to file a joint report on the status of the underlying state lawsuit every 90 days.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants**

**to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE