IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

      Plaintiff,

v.                                                         No. 2:24-cv-0027 MV/DLM

NEW MEXICO BONE AND JOINT INSTITUTE,
P.C.; AMERICAN FOUNDATION OF LOWER
EXTREMITY SURGERY AND RESEARCH, INC.,
a New Mexico Corporation; RILEY RAMPTON, DPM;
LOREN K. SPENCER, DPM; TERVON DORSEY,
individually; KIMBERLY DORSEY, individually; and
KATE FERLIC as GUARDIAN AD LITEM for K.D.
and J.D., minors,

      Defendants.

## AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

Before the Court is an insurance coverage dispute. Travelers Casualty Insurance Company of America (Travelers) issued a Commercial General Liability Policy (CGL Policy) to the New Mexico Bone and Joint Institute, P.C. (NMBJI). The CGL Policy covers NMBJI and two of its physicians (the CGL Policy Insureds) but contains a Professional Health Care Services exclusion that bars coverage for claims arising from medical treatment, advice, or instruction. Tervon Dorsey, a patient of NMBJI, alleges that he sustained bodily injuries due to the medical negligence of NMBJI providers. Dorsey, together with his family (the State Plaintiffs), filed suit against NMBJI and others in New Mexico state court,[2] and Travelers is providing a defense under a

---

[1] This Amended Proposed Findings and Recommended Disposition supersedes the one entered on February 10, 2025.

[2] The State Plaintiffs include Tervon Dorsey, Kimberly Dorsey, and Kate Ferlic, as guardian ad litem for K.D. and J.D., minors. The State Plaintiffs named the CGL Policy Insureds and the American Foundation of Lower Extremity Surgery and Research, Inc. (AFLESR) as defendants. (*See* Doc. 1-2 at 1.) The Court refers to the CGL Policy Insureds and AFLESR collectively as the State Defendants.

reservation of rights. Travelers and the CGL Policy Insureds have filed cross-motions for judgment on the pleadings: Travelers asks the Court to find that it owes no duty to defend the CGL Policy Insureds in the state lawsuit, and the CGL Policy Insureds ask the Court to find that Travelers has a duty to defend. (Docs. 3; 25.)

The undersigned originally entered a Proposed Findings and Recommended Disposition (PFRD) recommending the Court grant the CGL Policy Insureds' cross-motion and deny Travelers' motion. (*See* Doc. 51.) Travelers filed objections, and the CGL Policy Insureds and the State Plaintiffs responded. (Docs. 52–54.) I ordered supplemental briefing, which the parties timely filed. (Docs. 55–59.) Having considered the relevant law and the parties' arguments, I enter this Amended PFRD recommending the Court **GRANT** Travelers' motion (Doc. 3) and **DENY** the CGL Policy Insureds' motion (Doc. 25).[3] I further recommend **DENYING** the State Plaintiffs' motion to strike Travelers' motion as premature. (Doc. 21.)

I.      **Factual Background**

Travelers is a Connecticut insurance company doing business in New Mexico. (Docs. 1 ¶ 1; 24 ¶ 1.) NMBJI "is a New Mexico professional corporation" that employs podiatric physicians Drs. Rampton and Spencer. (*See* Docs. 1 ¶¶ 2, 4–5, 13; 24 ¶¶ 2, 4–5, 13.[4]) American Foundation of Lower Extremity Surgery and Research, Inc. (AFLESR) is a non-profit that "provides fellowships, scholarships, and research opportunities for those interested in advancing their medical education." (*See* Docs. 1 ¶¶ 3, 26; 24 ¶¶ 3, 26.) To support its mission, AFLESR sponsors

---

[3] Senior United States District Judge Martha Vázquez entered an Order of Reference on January 27, 2025, referring the pending cross-motions to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 50 at 1.)

[4] Although the State Defendants do not explicitly admit that Rampton and Spencer are "employees" of NMBJI (*see* Doc. 24 ¶ 13), the distinction is not relevant to the parties' motions.

medically trained fellows who work at NMBJI. (*See* Docs. 1 ¶ 26; 24 ¶ 26.) Spencer is the Treasurer of NMBJI and the Director and the President of AFLESR. (*See* Doc. 1-2 ¶ 7.)

Travelers issued the CGL Policy to NMBJI for the coverage period from January 3, 2020, through January 3, 2021. (Docs. 1 ¶ 14; 2 ¶ 14; *see also* Doc. 1-1 at 2.) The parties agree that the CGL Policy covers NMBJI, Rampton, and Spencer as insureds, but not AFLESR.[5] (*See* Docs. 3 at 8–9; 25 at 13.) The CGL Policy Coverage A covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that "is caused by an 'occurrence' that takes place in the 'coverage territory'" and "during the policy period . . . ." (Docs. 1 ¶ 16; 24 ¶ 16; *see also* Doc. 1-1 at 91.) It contains a "Professional Health Care Services" exclusion,[6] which excludes coverage for "'[p]ersonal injury' or 'advertising injury' arising out of providing or failing to provide 'professional health care services.'" (*See* Docs. 1 ¶ 22; 24 ¶ 22; *see also* Doc. 1-1 at 122.) The CGL Policy defines professional health care services, in relevant part, as "medical, surgical, . . . or nursing services, treatment, advice or instruction . . . ." (*See* Docs. 1 ¶ 23; 24 ¶ 23; *see also* Doc. 1-1 at 122.)

In relevant part, the state complaint asserts that Tervon Dorsey saw Dr. Spencer for podiatry consultations on October 4, 2019, and April 7, 2020. (Doc. 1-2 ¶¶ 39, 47.) Thereafter, Dr. Spencer and two AFLESR fellows performed surgery on Dorsey's left ankle on February 5, 2020, and on his right ankle on May 27, 2020. (*Id.* ¶¶ 45, 48.) Dorsey alleges he was not informed that the AFLESR fellows would be present at or participate in the surgeries, nor was he told that "Dr.

---

[5] To the extent Travelers asks the Court to find that AFLESR is not an insured under the policy, that request is moot. (*See* Doc. 3 at 8–9.)

[6] The CGL Policy also contains an "Expected Or Intended Injury" exclusion, which excludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (*See* Docs. 1 ¶ 21; 24 ¶ 21; *see also* Doc. 1-1 at 92.) Because I recommend finding that coverage is precluded by the Professional Health Care Services exclusion, I have not addressed the parties' arguments on this second exclusion.

3

Spencer had a relationship through AFLESR with fellow, Dr. [Rampton]." (*See id.* ¶¶ 40, 49.) Dorsey further asserts that Dr. Rampton, an AFLESR fellow, performed a faulty nerve block cortisone injection on Dorsey's right ankle without supervision on August 11, 2020, further injuring Dorsey. (*See id.* ¶¶ 10, 40, 52–53, 56.)

The State Plaintiffs filed suit in state court on July 31, 2023. (*See id.* at 1.) *See also Dorsey v. N.M. Bone & Joint Inst.*, D-101-CV-2023-01753 (N.M. 1st Jud. Dist. Ct., July 31, 2013). They allege that the State Defendants "were engaged in a joint venture/enterprise" with the "shared interest and objectives in having their health care providers . . . perform hasty medical work that fulfilled fellowship criteria and led to company profits, but that were not properly supervised." (Doc. 1-2 ¶¶ 16–17.) The State Plaintiffs maintain that "AFLESR fellows effectively provide low cost labor to NMBJI in exchange for fellowship credentialing." (*See id.* ¶ 41.) The State Plaintiffs further contend that the State Defendants made "coordinated medical recommendations to Tervon Dorsey that were motivated by profit and [to create] surgical procedure opportunities for fellows of AFLESR, instead of ensuring the recommendations for intervention were in the best interest of [Dorsey] . . . ." (*See id.* ¶ 66(a).) According to the State Plaintiffs, the State Defendants hid their "financial biases from [Dorsey] by not informing him that the surgery[ies] and procedures would be used to create opportunities for fellows through AFLESR over which Dr. Spencer had a financial interest via NMBJI." (*Id.* ¶ 66(b).) Put another way, the State Plaintiffs maintain that Defendants acted to protect their own "financial interests at the expense of [Dorsey's] welfare." (*Id.* ¶ 67.)

The state complaint includes claims for: (I) medical negligence and recklessness (Doc. 1-2 ¶¶ 65–68); (II) negligent and reckless hiring, training, supervision, retention, policies, and disclosures (*id.* ¶¶ 69–75); (III) civil conspiracy and joint venture (*id.* ¶¶ 76–87); (IV) fraudulent

4

concealment and lack of informed consent (*id.* ¶¶ 88–92); (V) unfair trade practices under the Unfair Practices Act (UPA), N.M. Stat. Ann. §§ 57-12-1–26 (*id.* ¶¶ 93–103); (VI) prima facie tort (*id.* ¶¶ 104–07); (VIII)[7] intentional infliction of emotional distress (*id.* ¶¶ 108–10); (IX) loss of consortium (*id.* ¶¶ 111–21); and (X) proximate cause and damages, including loss of chance and punitive damages (*id.* ¶¶ 122–26).

Although Travelers contends that the State Plaintiffs' claims are excluded from coverage by the Professional Health Care Services and Expected or Intended Injury exclusions, it nevertheless commenced defense of the state lawsuit under a reservation of rights. (*See* Docs. 1 ¶ 41; 24 ¶ 72.) On January 9, 2024, Travelers filed this Complaint for Declaratory Relief and asks the Court to declare that Travelers has no duty to defend or indemnify the CGL Policy Insureds in the underlying state lawsuit. (*See* Doc. 1 at 1, 11.) The State Defendants filed an Answer and Counterclaim. (Doc. 24.) Travelers moved for judgment on the pleadings (Doc. 3); the State Plaintiffs moved to strike Travelers' motion as untimely because it was premature (Doc. 21); and the CGL Policy Insureds filed a cross-motion for judgment on the pleadings (Doc. 25).

On February 10, 2025, the undersigned filed a PFRD recommending the Court deny Travelers' motion and grant the CGL Policy Insureds' motion. (Doc. 51.) Travelers filed objections, and both the CGL Policy Insureds and the State Plaintiffs responded. (Docs. 52–54.) I ordered additional briefing, and the matter is now ready for decision. (Docs. 55–59.)

## II. Legal Standard

### A. Motions for Judgment on the Pleadings

Under Federal Rule 12(c), the appropriate time for "a party [to] move for judgment on the pleadings" is "[a]fter the pleadings are closed–but early enough not to delay trial . . . ." Fed. R.

---

[7] The state complaint does not contain a Count VII. (*See* Doc. 1-2 at 16.)

Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citation omitted). Accordingly, the Court accepts as true all well-pleaded allegations and "construe[s] them in the light most favorable to the non-moving party." *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999) (citation omitted); *see also, e.g.*, *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (the grant of defendant's motion for judgment on the pleadings is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief") (quotation omitted).

### B. Relevant New Mexico Insurance Law

New Mexico substantive law governs the issue of whether Travelers has a duty to defend the CGL Policy insureds. *See Liberty Mut. Fire Ins. Co. v. Lyons*, 489 F. Supp. 3d 1242, 1247 (D.N.M. 2020), *aff'd*, No. 20-2152, 2021 WL 4592269 (10th Cir. Oct. 6, 2021). In New Mexico, courts treat insurance policies as ordinary contracts and construe them "according to customary principles of contract interpretation." *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, 519 F. Supp. 3d 1006, 1010 (D.N.M. 2021) (quoting *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013)). To determine whether an insurance company must defend an insured client against a lawsuit, courts "compar[e] the factual allegations in the complaint with the insurance policy." *Lyons*, 489 F. Supp. 3d at 1247 (quoting *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994)). If the claimant's complaint "alleges facts potentially within the coverage of the policy[,]" then the insurer has an obligation to defend its insured. *Id.* (quoting *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017)). This is true "even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not

the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." *Id.* (quoting *Am. Emps. Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)). Of course, an insurer is not obligated "to defend if the allegations in the complaint clearly fall outside the policy's provisions." *Id.* (quoting *Guaranty Nat'l Ins. Co. v. C de Baca*, 907 P.2d 210, 214 (N.M. Ct. App. 1995)). "[T]he insurer bears the burden of proving that there is no duty to defend, and any doubt about whether the allegations are within the policy coverage is resolved in the insured's favor." *Id.* (quoting *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1274 (D.N.M. 2019)).

Exclusionary clauses in insurance contracts "must be narrowly construed . . . ." *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 396 (N.M. 1992) (citation omitted). "In determining the applicability of [an] exclusion, [the] focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Lopez*, 870 P.2d at 747 (quoting *Continental Cas. Co. v. Hall*, 761 S.W.2d 54, 56 (Tex. Ct. App. 1988), *cert. denied*, 495 U.S. 932 (1990)) (subsequent citation omitted).

### III. The Court should deny the State Plaintiffs' request to strike Travelers' premature motion.

The State Plaintiffs ask the Court to strike Travelers' motion for judgment on the pleadings as premature given that Travelers filed its motion before any defendant entered an appearance. (*See* Doc. 21 at 2–4.) I agree the motion did not comply with the timing outlined in Federal Rule of Civil Procedure 12(c), which provides that a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed . . . ." In the future, counsel for Travelers should review and follow the relevant rules to avoid wasting the time and energy counsel spent (and the parties will ultimately pay for) arguing unnecessarily about whether the motion was untimely. Given that

the pleadings have now closed and the motion for judgment on the pleadings is ripe, I recommend denying the State Plaintiffs' request to strike Travelers' motion as premature.

### IV. Travelers has no duty to defend, because the Professional Health Care Services exclusion bars coverage for the State Plaintiffs' claims.

Although the state complaint alleges harms that would arguably be covered under the CGL Policy, Travelers successfully establishes that the Professional Health Care Services exclusion bars coverage and, therefore, Travelers owes no duty to defend.

#### A. Counts I (Medical Negligence and Recklessness), VI (Prima Facie Tort), VIII (Intentional Infliction of Emotional Distress), IX (Loss of Consortium), and X (Proximate Cause and Damages)

Neither the State Plaintiffs nor the CGL Policy Insureds argue that the medical negligence and recklessness claims in Count I, the prima facie tort claims in Count VI, the intentional infliction of emotional distress claims in Count VIII, the loss of consortium claims in Count IX, or the proximate cause and damages claims in Count X are covered by the CGL Policy. (*See* Docs. 21 at 4–5; 25.) Accordingly, I recommend finding that Counts I, VI, VIII, IX, and X are barred from coverage.

#### B. Count II (Negligent and Reckless Hiring, Training, Supervision, Retention, Policies, and Disclosures)

The State Plaintiffs summarily conclude that the claims in Count II "are distinct from the malpractice conduct of the podiatrists . . . ." (Doc. 21 at 5.) The CGL Policy Insureds, however, admit that the Count II claims do not trigger a duty to defend. (Doc. 25 at 17.) As Travelers explains in its motion, "New Mexico courts have found that the professional services exclusion excepts coverage for a negligent hiring claim." (Doc. 3 at 11 (discussing *Millers Cas. Ins. Co. of Tex. v. Flores*, 876 P.2d 227, 230 (N.M. 1994)).) The State Plaintiffs offer no authority to show otherwise. (*See* Doc. 21.) Thus, I recommend finding that Count II is barred from coverage by the Professional

8

Health Services exclusion.

### C. Counts III (Civil Conspiracy and Joint Venture), IV (Fraudulent Concealment and Lack of Informed Consent), and V (Unfair Trade Practices)

Finally, Travelers argues that the CGL Policy provides no coverage for Counts III (civil conspiracy and joint venture), IV (fraudulent concealment and lack of informed consent), or V (unfair trade practices) because: (1) the CGL Policy excludes "coverage for any claims arising out of the delivery of medical treatment, advice[,] or instruction"; and (2) these claims are "tied to a bodily injury that [the State Plaintiffs] assert arose out of medical negligence . . . ." (*See* Doc. 3 at 1; 33 at 6.) The CGL Policy Insureds disagree and argue that the allegations in Counts III–V refer to administrative acts and decisions that do not utilize specialized knowledge or training, and, therefore, the conduct falls outside of the Professional Health Care Services exclusion. (*See* Doc. 25 at 15–16.) Having considered the relevant authority and the parties' arguments, I recommend finding that Counts III–V are barred from coverage.

The Professional Health Care Services exclusion excludes from coverage personal or advertising injuries "arising out of providing or failing to provide 'professional health care services.'" (Doc. 1-1 at 122.) The Court will enforce this exclusion if it is "'clear and unambiguous' and 'do[es] not conflict with public policy . . . .'" *See Farm Bureau Prop. & Cas. Ins. Co. v. Szantho*, No. 1:22-cv-501 KK/JFR, 2024 WL 5089194, at *9 (D.N.M. Dec. 12, 2024) (quoting *N.M. Physicians Mut. Liability Co. v. LaMure*, 860 P.2d 734, 737) (subsequent citation omitted). The Court must first, therefore, "consider whether the exclusion is clear and unambiguous and comports with public policy." *See id.*

Regarding the exclusion's clarity, "'[t]he only phrase susceptible to potential ambiguity' in light of the [parties'] arguments . . . is 'arising out of.'" *See id.* (quoting *Evanston Ins. Co. v.*

*Desert State Life Mgmt.*, 56 F.4th 899, 908 (10th Cir. 2022) (*Evanston*)). The Tenth Circuit observed in *Evanston* "that the New Mexico Supreme Court has twice read a similar phrase, *i.e.*, 'arising from,' in an exclusionary clause to be unambiguous." *See id.* (quoting *Evanston*, 56 F.4th at 909 (discussing *Lopez*, 870 P.2d at 747; *Askew v. Miller Mut. Fire Ins. Co. of Tex.*, 522 P.2d 574, 575 (N.M. 1974))). Thus, the Tenth Circuit found, "the phrase 'arising out of' in an exclusionary clause is unambiguous and enforced a policy exclusion using this phrase as written." *Id.* (citing *Evanston*, 56 F.4th at 909). Similarly, here, I recommend finding that the phrase "arising out of" "is clear and unambiguous and must be applied as written." *See id.* (citing *Evanston*, 56 F.4th at 909) (subsequent citation omitted).

The Court must next determine whether the exclusion comports with public policy. *See id.* "With the development of professional liability insurance policies, such as [medical] malpractice" insurance, "insurance carriers began to add 'professional services' exclusions to commercial and business general liability policies," excluding from coverage claims "arising out of the rendering or failure to render professional services, in order to prevent overlapping coverage between the two types of policies. . . ." 22 A.L.R. 7th Art. 2 (2017). These exclusions, such as the one at issue here, are now "virtually standard" in commercial general liability policies. *See id.* The CGL Policy Insureds do not explicitly argue otherwise. (*See* Doc. 25.) They do, however, mention that their professional liability insurer, MedPro Group, has "reserved rights and denied coverage for certain allegations in the [state l]awsuit" on the grounds that some claims "fall outside the scope of professional medical services." (*Id.* at 10, 21.) Yet neither MedPro's position regarding its separate professional liability policy, nor a potential gap in the CGL Policy Insureds' coverage, is relevant to this lawsuit. Nor have the CGL Policy Insureds developed any argument to establish that a gap in coverage constitutes a basis to find that the exclusion offends public policy. Additionally, both

10

the CGL Policy Insureds and the State Plaintiffs briefly argue that to read the Professional Health Care Services exclusion to preclude coverage for injuries that "arise out of" medical negligence would render the CGL Policy "essentially useless to an insured" or "illusory." (*See* Docs. 57 at 6; 58 at 7.) I disagree. The CGL Policy would still cover damages due to covered events at the facility, such as bodily injury from a slip and fall or a broken chair. Hence, I recommend finding that the exclusion comports with public policy.

Finally, the Court must determine whether, as a matter of law, Counts III–V fall within the scope of the Professional Health Care Services exclusion. In the original briefs and my first PFRD, the focus was largely on whether the state claims "arose out of" the State Defendants' *conduct*; that is, on whether the allegations related to the physicians' professional judgment (and were, therefore, repackaged medical negligence claims) or instead, whether they related to purely business or entrepreneurial decisions (and were thus properly asserted under the UPA). My initial analysis of the issue, however, omitted a critical component: "In determining the applicability of [an] exclusion, [the] focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Evanston*, 56 F.4th at 909 (quoting *Lopez*, 870 P.2d at 747). Accordingly, to determine whether the State Plaintiffs' injuries arose out of professional health care services, "the Court's focus must be on the cause or origin of [their] injuries, and not on the legal theories on which [they] have] relied in attempting to hold [the CGL Policy insureds] liable." *See Szantho*, 2024 WL 5089194, at *11.

I recommend finding that there are no factual allegations connecting bodily injury—the type covered under the relevant policy (*see* Doc. 1-1 at 90; *see also* Doc. 52 at 5 n.1)—to non-professional business conduct. Under the CGL Policy, "bodily injury" is defined as "[p]hysical harm . . . or . . . [m]ental anguish . . . or emotional distress[] resulting at any time from such physical

11

harm . . . ." (*See* Doc. 1-1 at 107.) The Court looks first at Dorsey's physical harm, that is, the injuries to his ankles. The decision in *Zurich Am. Ins. Co. v. Good to Go, LLC*, No. 16-cv-1067-F, 2018 WL 8333413 (W.D. Okla. Jan. 2, 2018) is instructive. In *Zurich*, the plaintiffs sued a medical clinic and a provider for injuries arising from the prescription of controlled medications. *See* 2018 WL 8333413, at *1. The insurer (Zurich) issued a commercial general policy to the clinic and argued that a professional services exclusion precluded coverage of the patients' claims. *See id.* at *3. The patients disagreed and cited allegations related to non-professional services. *See id.* at *8. The court rejected the patients' argument on the basis that although the lawsuit alleged that the defendants "provided services of a non-professional nature," there were no allegations that the bodily injuries were caused by non-professional services. *See id.* Instead, the patients alleged that their "bodily injuries were caused by the negligent prescription of drugs[,]" a medical service. *See id.* (citation omitted). Similarly, here, all allegations related to Dorsey's physical injuries are directly connected to medical procedures conducted by the medical practitioners. (*See generally* Doc. 1-2.) Under *Evanston*, then, the origin of the physical harm to Dorsey's ankles stems from alleged medical negligence, that is, from professional health care services. Consequently, I recommend finding that the Professional Health Care Services exclusion precludes coverage for the claims in Counts III–V associated with these physical injuries.

The same conclusion applies to Dorsey's mental injuries—that is, his claimed emotional distress and anxiety. The state complaint lists two sources of "emotional distress and anxiety" as damages: (1) that associated with "his pain and disability"; and separately, (2) that associated with "being defrauded, misled, and abused by the [State] Defendants . . . ." (Doc. 1-2 ¶ 123.) As with the alleged physical harm, any emotional distress and anxiety that results from the physical harm and its resulting pain and disability is necessarily precluded from coverage on the basis that the

damages originate from alleged medical negligence. *See Evanston*, 56 F.4th at 909.

The CGL Policy Insureds and the State Plaintiffs argue, though, that the emotional distress and anxiety may be separately attributed to the State Defendants' business practices and not to medical negligence. (*See* Docs. 57 at 8; 58 at 4.) This argument is a non-starter.[8] Returning to the CGL Policy's definition of "bodily injury," the Court notes that "mental anguish" is included in that definition **if it results from physical harm**. (*See* Doc. 1-1 at 107.) Thus, Dorsey's emotional distress and anxiety are only considered a "bodily injury" and only trigger coverage if they **result** from physical harm. *Cf. State Farm Fire & Cas. Co. v. Dawson*, 687 F. App'x 740, 743 (10th Cir. May 3, 2017) (noting that where a plaintiff alleged mental but not physical injury, coverage was precluded where the policy defined "bodily injury" as "physical injury" and excluded "emotional distress, mental anguish, . . . or any similar injury *unless it arises out of actual physical injury* to some person") (emphasis added). The only physical harm alleged in the state complaint originated from the State Defendants' alleged medical negligence. Accordingly, any emotional distress and anxiety that originated from the providers' non-professional conduct is unconnected to a physical injury and is, therefore, excluded from the definition of "bodily injury" covered by the CGL Policy. *Cf. Zurich*, 2018 WL 8333413, at *8 (finding no coverage where the state lawsuit did not allege bodily injury caused by non-professional conduct). As a result, I recommend finding that the emotional distress and anxiety are not attached to any physical harm associated with non-professional conduct and are thus precluded from coverage because they do not fall within the definition of bodily injury.

In sum, I recommend finding that neither the State Plaintiffs nor the CGL Policy Insureds

---

[8] Much like Travelers' argument regarding possible statutory damages under the UPA (*see* Doc. 52 at 5–6), the Court notes that if the state complaint does not allege bodily injury as defined in the CGL Policy, then coverage is not triggered.

have adequately pointed to allegations of bodily injury covered by the CGL Policy that originates separate and apart from the State Defendants' alleged medical negligence in Counts III–V. On the contrary, the only potentially covered bodily injuries will rely on a finding that the physicians' professional conduct injured Mr. Dorsey. *Cf. Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075, 1095 (N.M. Ct. App. 2010) (in determining whether a claim is one for medical negligence or one brought under the UPA, the inquiry "hinges on whether the medical negligence and UPA claims are coterminous or indistinguishable; that is, whether they rely on the same facts and rely on a judgment as to the 'actual competence of the medical practitioner' for resolution") (quotation omitted). Consequently, viewing the facts in a light most favorable to the CGL Policy Insureds, I recommend finding that there is no coverage for Counts III–V.

Because coverage is precluded for all counts in the state complaint, I recommend finding that Travelers has no duty to defend.

## V.     Travelers has no duty to indemnify.

"If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required." *Atyani*, 366 F. Supp. 3d at 1281 (quoting *Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo*, 114 N.M. 695, 845 P.2d 789, 791 (1992). Because I recommend finding that Travelers does not owe "the broader duty to defend in the underlying" state lawsuit, I further recommend finding that Travelers has no duty to indemnify the CGL Policy Insureds for the state claims either. *See id.*

**IT IS HEREBY RECOMMENDED** that Travelers' Motion for Judgment on the Pleadings (Doc. 3) be **GRANTED** and the CGL Policy Insureds' Counter-Motion for Judgment on the Pleadings (Doc. 25) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the State Plaintiffs' Motion to Strike (Doc.

21) be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE